# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## RAMBIN v ALLSTATE INSURANCE COMPANY

Docket No. 146256. Argued October 23, 2013. Decided May 20, 2014.

Lejuan Rambin brought an action in the Wayne Circuit Court against Allstate Insurance Company and Titan Insurance Company, seeking payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq*. Rambin had been injured while riding a motorcycle owned by and registered to Scott Hertzog. At the time of the accident, Rambin did not own a motor vehicle. The car involved in the accident was uninsured, but Rambin averred that Hertzog owned a car that Allstate insured. Allstate denied Rambin's claim for PIP benefits. Rambin alternatively alleged that if Allstate was not the responsible insurer, he was entitled to PIP benefits from Titan, the insurer to which the Michigan Assigned Claims Facility had assigned his claim. Titan and Allstate moved for summary disposition, asserting that Rambin had taken the motorcycle unlawfully and was therefore barred from recovering PIP benefits by the unlawful-taking exclusion of MCL 500.3113(a). Rambin also moved for summary disposition, asserting (1) that he had joined a motorcycle club even though he did not own a motorcycle, (2) that Hertzog's motorcycle was subsequently stolen, (3) that Rambin needed a motorcycle to participate in a club ride, (4) that a person named Andre Smith had offered to loan him a motorcycle, and (5) that during the ride he collided with the uninsured automobile while operating that motorcycle. The court, Susan D. Borman, J., granted both defendants summary disposition, and Rambin appealed. The Court of Appeals, DONOFRIO, P.J., and BOONSTRA, J. (RONAYNE KRAUSE, J., concurring in part and dissenting in part), reversed and remanded, holding that Rambin had not taken the motorcycle unlawfully within the meaning of MCL 500.3113(a). The Court of Appeals further stated that there was no dispute that Rambin had not taken the motorcycle in violation of the Michigan Penal Code, MCL 750.1 *et seq*., and that from his perspective, there had been no unlawful taking. 297 Mich App 679 (2012). Allstate applied for leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action. 493 Mich 973 (2013).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, McCORMACK, and VIVIANO, the Supreme Court, *held*:

MCL 750.414, which prohibits the unlawful taking of a vehicle, is not a strict-liability crime, but contains the *mens rea* element that the taker must have intended to take the vehicle without authority.

1. MCL 500.3113(a) provides that a person is not entitled to PIP benefits for accidental bodily injury if at the time of the accident the person was using a motor vehicle or motorcycle that he or she had taken unlawfully unless the person reasonably believed that he or she was entitled to take and use the vehicle. MCL 750.414, informally called a joyriding statute, provides that any person who takes or uses without authority a motor vehicle without the intent to steal the vehicle or is a party to the unauthorized taking or using is guilty of a misdemeanor. In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503 (2012), the Supreme Court held that any person who takes a vehicle contrary to a provision of the Michigan Penal Code (including MCL 750.414) has taken the vehicle unlawfully for purposes of MCL 500.3113(a). Unlike *Spectrum Health*, however, this case did not involve the taking of a vehicle against the express prohibition of the vehicle's owner. Rather, Rambin presented evidence that in his opinion showed that the person who gave him permission to take the motorcycle was the rightful owner.

2. Allstate maintained that Rambin's good faith was legally irrelevant because MCL 750.414 is a strict-liability crime and that absent express consent from the actual owner for the taking, Rambin was barred from recovering PIP benefits. Strict-liability offenses, however, are generally disfavored. Courts will infer an element of criminal intent when an offense is silent regarding *mens rea* unless the statute contains an express or implied indication that the Legislature intended the imposition of strict criminal liability. Further, the presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime.

3. MCL 750.414 expressly precludes the necessity of having an intent to steal. Accordingly, while the statute prohibits the unauthorized use or taking of a motor vehicle, it does not require showing that the perpetrator intended to permanently deprive the owner of the vehicle. Although the Legislature expressly eliminated this common-law element of larceny crimes, however, it did not dispense with *mens rea* altogether. MCL 750.414 is not a strict-liability offense. While it is clear that an intent to steal is not an element of the offense, MCL 750.414 nonetheless requires an intent to take without authority or an intent to use without authority.

4. For a person to take personal property without the authority of the actual owner, there must be some evidence to support the proposition that the person from whom he or she received the property did not have the right to control or command the property. Rambin was entitled to present evidence to establish that because he did not knowingly lack authority to take the motorcycle in light of his belief that he had authority to do so, he did not run afoul of MCL 750.414 and, therefore, did not unlawfully take the motorcycle under MCL 500.3113(a). Accordingly, the Court of Appeals was correct insofar as it held that Rambin would be entitled to PIP benefits if the evidence established that he did not know the motorcycle was stolen.

5. The Court of Appeals, however, incorrectly concluded that Rambin was entitled to a finding as a matter of law that he did not take the motorcycle unlawfully given the substantial circumstantial evidence to the contrary. The Court of Appeals improperly made findings in regard to facts in this case that were still disputed.

Affirmed in part, reversed in part, and remanded for further proceedings.

Justice CAVANAGH, concurring in part and dissenting in part, stated that for the reasons given in his dissent in *Spectrum Health*, he continued to believe that the phrase "taken unlawfully" in MCL 500.3113(a) includes only vehicle thefts. Because he agreed that a question of fact remained regarding whether Rambin stole the motorcycle, however, Justice CAVANAGH agreed with reversing the Court of Appeals' decision in part and remanding the case to the trial court.

©2014 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED MAY 20, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

LEJUAN RAMBIN,

        Plaintiff-Appellee,

v                                    No. 146256

ALLSTATE INSURANCE COMPANY,

        Defendant/Cross-
        Defendant/Third-Party
        Plaintiff-Appellant,

and

TITAN INSURANCE COMPANY,

        Defendant/Cross-Plaintiff-
        Appellee,

and

AAA OF MICHIGAN,

        Third-Party Defendant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In this case we are called on to examine the meaning of MCL 750.414, the misdemeanor joyriding statute, in the context of MCL 500.3113(a), which excludes certain individuals from entitlement to personal protection insurance benefits (commonly known as "PIP benefits") under the no-fault act. Specifically, under MCL 500.3113(a), a person who was injured while "using a motor vehicle or motorcycle which he or she had taken unlawfully," is not entitled to PIP benefits. We recently examined these statutory provisions in *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*.[1] We held that a person injured while driving a motor vehicle that was taken contrary to the express prohibition of the vehicle owner cannot receive PIP benefits. We further held "that any person who takes a vehicle contrary to a provision of the Michigan Penal Code— including MCL 750.413 and MCL 750.414, informally known as the 'joyriding' statutes—has taken the vehicle unlawfully for purposes of MCL 500.3113(a)."[2]

Unlike *Spectrum Health*, the present case does not involve the taking of a vehicle against the express prohibition of the vehicle owner. Rather, plaintiff presented evidence that, in his view, showed that the person who granted him permission to take the motorcycle on which he was injured was the rightful owner. Against this background, we examine whether MCL 750.414, which makes it a misdemeanor to take or use a vehicle

[1] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012).

[2] *Id*. at 509 (citation omitted).

2

without authority of its owner, is a strict liability crime for purposes of applying MCL 500.3113(a). We hold that MCL 750.414 is not a strict liability crime and that it contains a *mens rea* element that the taker must intend to take a vehicle "without authority." Accordingly, we affirm the Court of Appeals' decision insofar as it holds that plaintiff is entitled to PIP benefits if the evidence establishes he did not know the motorcycle he had taken was stolen.

We nonetheless disagree with the Court of Appeals' conclusion that plaintiff was entitled to a finding as a matter of law that he did not take the motorcycle unlawfully, given the circumstantial evidence presented in this case. The Court of Appeals improperly made findings in regard to the facts of this case that were still very much in dispute. We affirm in part and reverse in part the opinion of the Court of Appeals, and remand to the circuit court for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEEDINGS

Plaintiff Lejuan Rambin filed a complaint in circuit court against Allstate Insurance Company (Allstate) and Titan Insurance Company (Titan), claiming PIP benefits pursuant to the Michigan No Fault Act, MCL 500.3105 *et seq*. Plaintiff alleged that on August 23, 2009, he sustained bodily injury when the motorcycle he was operating was involved in an accident. In the complaint, plaintiff admitted that he did not own a motor vehicle at the time of the accident, and that the motorcycle he was riding was owned by and registered to Scott Hertzog. Plaintiff noted that the car involved in the accident was also uninsured. Plaintiff nonetheless averred that Scott Hertzog owned a car

that was insured by Allstate.[3]  Plaintiff asserted a right to PIP benefits from Allstate, but Allstate denied his claim.  Plaintiff alternatively alleged that if Allstate was not the responsible insurer, he was entitled to PIP benefits from Titan, the insurer to which the claim was assigned by the Michigan Assigned Claims Facility (ACF).[4]

After the parties had engaged in discovery,[5] including taking plaintiff's deposition, Titan filed a motion for summary disposition, arguing that plaintiff is barred from

---

[3] MCL 500.3114(5) provides that

> [a] person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> * * *
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

[4] See MCL 500.3172(1), which provides, in pertinent part:

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle . . . in this state may obtain personal protection insurance benefits through the assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed.

[5] To the extent no fault liability was at least in part enacted to reduce litigation, the procedural history of this case would cause one to question whether this end has been achieved.  Titan filed an answer to the complaint generally denying plaintiff's allegations,

recovery of PIP benefits if he was involved in the theft of the motorcycle. Allstate likewise filed a motion for summary disposition claiming plaintiff had taken the motorcycle unlawfully, and was thus barred from recovery of PIP benefits by MCL 500.3113(a).

Not to be left out, plaintiff also filed a motion for summary disposition. Plaintiff maintained that discovery had revealed several facts, many of which he claimed were "undisputed." Plaintiff asserted that, in June 2009, he joined the Phantom Motorcycle Club though he did not own a motorcycle. On August 4, 2009, Scott Hertzog's motorcycle was stolen. On August 22, 2009, members of the club informed plaintiff that he needed a motorcycle to participate in the club ride that night. Plaintiff claimed that a person named Andre Smith offered to loan him a motorcycle for the club ride. Plaintiff claims that on August 22, 2009, at 7:00 p.m., he went to a house on Kentfield in Detroit, where Andre Smith handed plaintiff the keys to the motorcycle and told him that he could use the motorcycle for the club ride. On August 23, 2009, at approximately 1:20 a.m.,

---

but also filed a cross-complaint against Allstate. In the cross-complaint, Titan acknowledged that the ACF had assigned Titan to provide benefits for plaintiff's no-fault claim as an insurer of last resort, but asserted that Allstate occupied a higher order of priority for payment of plaintiff's benefits. Allstate then filed an answer to plaintiff's complaint generally denying plaintiff's allegations. Allstate also filed an answer to Titan's cross-complaint in which it acknowledged that it had issued a no-fault policy insuring Scott Hertzog's motor vehicle, but otherwise denied the allegations that it was the responsible insurer. Allstate then filed a third-party complaint against Auto Club Insurance Association (ACIA) alleging that ACIA had issued a no-fault policy to a member of plaintiff's household that was in effect at the time of the accident, and therefore ACIA occupied a higher order of priority for payment of plaintiff's benefits. ACIA filed an answer to the third-party complaint denying the allegations. Ultimately, the parties stipulated to ACIA's dismissal.

plaintiff collided with an uninsured automobile while operating the motorcycle he had taken from Andre Smith. Following the accident, plaintiff informed police that he had borrowed the motorcycle from a friend, Andre Smith, who lived on Kentfield. Plaintiff, however, was unable to inform the police which house Andre resided in and plaintiff was unable to provide the police any information to reach Andre.[6]

The circuit court issued an order that granted summary disposition in favor of Allstate and Titan.[7] Plaintiff appealed as of right the court's decision in the Court of Appeals. Before the Court of Appeals, plaintiff maintained that he did not unlawfully take the motorcycle and that he had a reasonable belief that he was entitled to take and use it. Plaintiff claimed that he did not take the motorcycle with the willful intent to do

---

[6] As developed later in this opinion, there are many facts that weigh against plaintiff's claim that he did not know the motorcycle was stolen. See Part III(B) of this opinion.

[7] The circuit court, without the benefit of our opinion in *Spectrum Health*, relied on *Amerisure Ins Co v Plumb*, 282 Mich App 417; 766 NW2d 878 (2009) when granting judgment against plaintiff. Specifically, the circuit court relied on *Plumb*'s discussion of an unlawful taking under MCL 500.3113(a). In *Plumb*, the Court of Appeals did not cite a violation of the Michigan Penal Code (or any other prohibitive law) to establish an unlawful taking under MCL 500.3113(a). Rather, the *Plumb* Court focused exclusively on whether there was evidence that Plumb had received permission from an owner to take the motor vehicle. The *Plumb* Court reached this conclusion despite later noting that "[i]f Plumb received the keys from someone who appeared to own the [vehicle], it would have been reasonable for her to believe that she was entitled to take the [vehicle] within the meaning of § 3113(a)." In short, the *Plumb* Court addressed an unlawful taking under MCL 500.3113(a) in terms of the owner's perspective. But, as we stated in *Spectrum Health*, "MCL 500.3113(a) does not contain language regarding *an owner's* 'express or implied consent or knowledge' because it examines the legality of the taking from the *driver's* perspective . . . ." *Spectrum*, 492 Mich at 522. Thus, we disagree with *Plumb* to the extent it can be read to suggest a person has unlawfully taken a vehicle or motorcycle under the no-fault act solely on the basis that a person takes a vehicle without the owner's permission. Rather, we reassert the notion that the phrase "taken unlawfully" must be considered from the driver's perspective.

so unlawfully or with knowledge that he lacked authority. The Court of Appeals reversed the circuit court's grant of summary disposition to Allstate and Titan, holding "that plaintiff did not take [the motorcycle] unlawfully [within the meaning of] MCL 500.3113(a)."[8] The Court of Appeals concluded that, "[i]n this case, there is no dispute that plaintiff did not take the [motorcycle] in violation of the Michigan Penal Code, and that, viewed from plaintiff's (the driver's) perspective, there was no 'unlawful taking.' "[9] The Court of Appeals further concluded that based on the record evidence, there was no genuine issue of material fact that plaintiff did not take the motorcycle unlawfully, and it remanded the case to the trial court for further proceedings.

Allstate applied for leave to appeal in this Court. We directed the Clerk to schedule oral argument on whether to grant the application or take other action.[10] We specifically requested that the parties address

> whether the plaintiff took the motorcycle on which he was injured "unlawfully" within the meaning of MCL 500.3113(a), and specifically, whether "taken unlawfully" under MCL 500.3113(a) requires the "person . . . using [the] motor vehicle or motorcycle" to know that such use has not been authorized by the vehicle or motorcycle owner, see MCL 750.414; *People v Laur*, 128 Mich App 453 (1983), and, if so, whether the Court of Appeals erred in concluding that plaintiff lacked such knowledge

---

[8] *Rambin v Allstate Ins Co*, 297 Mich App 679, 702; 825 NW2d 95 (2012). Judge RONAYNE KRAUSE issued a separate opinion concurring in part and dissenting in part. Judge RONAYNE KRAUSE agreed "with the result reached by the majority."

[9]*Id*. at 702. The Court of Appeals did not reach the later portion of MCL 500.3113(a), which again provides that "even if an injured person had 'taken [a motorcycle] unlawfully' ." MCL 500.3113(a) does not apply if "the person reasonably believed that he or she was entitled to take and use the [motorcycle]." *Id*. at 703.

[10]MCR 7.302(H)(1).

7

as a matter of law given the circumstantial evidence presented in this case.[11]

## II. STANDARD OF REVIEW

We review de novo the denial of a motion for summary disposition.[12] A motion for summary disposition under MCR 2.116(C)(10) requires the reviewing court to consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[13] Also, this case involves interpretation of a statute, a question of law that we review de novo on appeal.[14]

## III. ANALYSIS

### A. TAKING UNLAWFULLY UNDER MCL 500.3113

MCL 500.3113 provides:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

---

[11]*Rambin v Allstate Ins Co*, 493 Mich 973 (2013).

[12]*Douglas v Allstate Ins Co*, 492 Mich 241, 256; 821 NW2d 472 (2012), citing *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

[13]*Id.*, citing *Brown v Brown*, 478 Mich 545, 551-552; 739 NW2d 313 (2007).

[14] *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

In each of the *Spectrum Health* companion cases, our application of MCL 500.3113(a) was straightforward. The dispositive issue in each case was "whether a person injured while driving a motor vehicle that the person had taken contrary to the *express* prohibition of the owner may avail himself or herself of [PIP benefits] . . . under the no-fault act, notwithstanding the fact that MCL 500.3113(a) bars a person from receiving PIP benefits for injuries suffered while using a vehicle that he or she 'had taken unlawfully . . . .' "[15] In both cases, the owner had expressly told each person injured while driving the motor vehicle that they could not use the motor vehicle. In essence, we rejected these claims premised on the notion that a person cannot take a vehicle contrary to an owner's express prohibition and maintain that he or she did not "unlawfully take" the vehicle under MCL 500.3113(a). We concluded that "any person who takes a vehicle contrary to a provision of the Michigan Penal Code—including MCL 750.413 and MCL 750.414, informally known as the 'joyriding' statutes—has taken the vehicle unlawfully within the meaning of MCL 500.3113(a)."[16] Because in *Spectrum* the owners had expressly told each person injured while driving the motor vehicle that they could not use the motor vehicle, we did not have occasion to reach the question whether MCL 500.3113(a) requires the "person . . . using [the] motor vehicle or motorcycle" to know that such use has not been authorized by the vehicle or motorcycle owner.

The facts of the present case stand in contrast to those in *Spectrum.* Plaintiff claims he did not knowingly lack authority to take the motorcycle because he believed

---

[15]*Spectrum*, 492 Mich at 508 (emphasis added).

[16]*Id*. at 537.

that the person who gave him access to the motorcycle was the rightful and legal owner of it.  In support, he cites *People v Laur*, which held that MCL 750.414 is a general intent crime.[17]  Allstate however maintains that plaintiff's good faith is legally irrelevant because MCL 750.414 is a strict liability crime.  Allstate maintains that absent express consent from the actual owner, plaintiff is barred from recovering PIP benefits.

### 1.  LIABILITY FOR CRIMINAL OFFENSES GENERALLY

As a general rule, "strict-liability offenses are disfavored."[18]  To that end, "courts will infer an element of criminal intent when an offense is silent regarding *mens rea* unless the statute contains an express or implied indication that the legislative body intended that strict criminal liability be imposed."[19]  Further, this presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime.[20]  This presumption stems from the "[u]nqualified acceptance of this doctrine by English common law in the Eighteenth Century."[21]  For this reason, the existence of *mens rea* " 'is the rule of, rather than the exception to, the principles of Anglo-American criminal

---

[17] *People v Laur*, 128 Mich App 453, 455; 340 NW2d 655 (1983).

[18] *People v Likine*, 492 Mich 367, 391; 823 NW2d 50 (2012).

[19] *Id*. at 391-392, quoting *People v Kowalski*, 489 Mich 488, 499 n 12; 803 NW2d 200 (2011), in turn citing *People v Tombs*, 472 Mich 446, 452-456; 697 NW2d 494 (2005), *United States v X-Citement Video, Inc*, 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994), *Staples v United States*, 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994), and *Morissette v United States*, 342 US 246; 72 S Ct 240, 96 L Ed 288 (1952).

[20] *Tombs*, 472 Mich at 454-455.

[21] *Morrissette*, 342 US at 251.

10

jurisprudence.' "[22]  With this general rule in mind, we examine the language of the statute itself to determine whether the statute imposes strict liability or requires proof of a guilty mind.[23]

### 2.  MCL 750.414

MCL 750.414 provides:

> Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $1,500.00.  However, in case of a first offense, the court may reduce the punishment to imprisonment for not more than 3 months or a fine of not more than $500.00.  However, this section does not apply to any person or persons employed by the owner of said motor vehicle or anyone else, who, by the nature of his or her employment, has the charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge or consent.

As this Court noted in *Spectrum*, "MCL 750.414 contains disjunctive prohibitions: it prohibits someone from 'tak[ing]' a motor vehicle 'without authority' and, alternatively, it prohibits someone from 'us[ing]' a motor vehicle 'without authority.' "[24] Significantly, however, MCL 750.414 expressly precludes "an intent to steal."  Thus, while the statute prohibits the unauthorized use or taking of a motor vehicle, it does not require a showing that the perpetrator intended to permanently deprive the owner of the

---

[22] *Staples*, 511 US at 605, quoting *United States v United States Gypsum Co*, 438 US 422, 436; 98 S Ct 2864; 57 L Ed 2d 854 (1978).

[23] *Tombs*, 472 Mich at 451, citing *People v Quinn*, 440 Mich 178, 185; 487 NW2d 194 (1992).

[24]*Spectrum*, 492 Mich at 517 n 24.

11

vehicle. The omission of the "intent to steal" requirement is understood when considering the statute's historical context:

> The social problem back of this legislation is well known. When the automobile began to appear and was limited to the possession of a few of the more fortunate members of the community, many persons who ordinarily respected the property rights of others, yielded to the temptation to drive one of these new contrivances without the consent of the owner. This became so common that the term "joyrider" was coined to refer to the person who indulged in such unpermitted use of another's car.[25]

" '[T]he prevalence of this kind of trespass made it very difficult to secure convictions in cases of outright larceny of motor vehicles, because the claim of an intent to return usually seemed plausible.' "[26] Thus, while the " 'statutory offense may be designated larceny, the common-law definition of larceny is changed by eliminating the requirement of intent permanently to deprive the owner of his property.' "[27] Further, " '[w]hile the elements of the offense depend upon the wording of the statute, they usually consist of taking possession of a vehicle, driving or taking it away, willfulness, and lack of authority; proof of intent to permanently deprive the owner of the property is not required.' "[28] We conclude that the phrase "without an intent to steal" in MCL 750.414 reflects the Legislature's intention to expressly eliminate the common-law

---

[25] *People v Hayward*, 127 Mich App 50, 62; 338 Mich App 50 (1983), quoting Perkins on Criminal Law (2d ed), pp 272-273.

[26] *Id*. at 62-63, quoting Perkins on Criminal Law (2d ed), pp 272-273.

[27] *Id*. at 61, quoting 7A Am Jur 2d, Automobiles and Highway Traffic, § 349, at 534-535.

[28] *Id*. at 62, quoting 7A Am Jur 2d, Automobiles and Highway Traffic, § 349, at 534-535.

requirement in larceny of an intent to permanently deprive the owner of his or her property.

However, simply because the Legislature made clear that this specific element of common-law larceny need not be shown to establish this statutory offense does not suggest that the Legislature intended to dispense with *mens rea* altogether.[29] Indeed, from a historical perspective it is clear that the Legislature used the phrase "without an intent to steal" merely to preclude an offender from arguing he or she lacked the specific intent to permanently deprive the owner of his or her property. The Legislature readily could have substituted the phrase "without an intent to steal" with "without regard to intent" and created a strict liability offense, but it did not. To that end, it is reasonable to infer that the Legislature's elimination of "an intent to steal" without a complete elimination of intent altogether reflects an intent to retain an element of *mens rea*. For this reason, we conclude that the phrase "without an intent to steal" is not an express or implied indication that our Legislature intended to dispense with the element of *mens rea* under MCL 750.414.

### 3. THE RELATIONSHIP BETWEEN MCL 750.414 AND MCL 750.413

Allstate urges us to consider MCL 750.414 in the context of MCL 750.413, which was first enacted in its current form along with MCL 750.414.[30] MCL 750.413 prohibits a person from "wilfully and without authority, tak[ing] possession of and driv[ing] or tak[ing] away . . . any motor vehicle, belonging to another . . . ." Allstate contrasts the

---

[29] *Tombs*, 472 Mich at 454-455.

[30] 1931 PA 238.

absence of any express *mens rea* element in the text of MCL 750.414 with the Legislature's affirmative placement of such elements in MCL 750.413, a related and similar statute, and asserts that MCL 750.414 must be applied, as written, as a strict liability offense.

We reject Allstate's assertion and conclude that MCL 750.414 is not a strict liability offense. First, as previously discussed, we believe that the Legislature, in stating "without an intent to steal," intended to eliminate the specific intent to permanently deprive the owner of his or her property. While it is very clear that "an intent to steal" is not an element of this offense, this language does not preclude an understanding of MCL 750.414 that requires an intent to take without authority or an intent to use without authority.

Second, MCL 750.413 does not contain prohibitions against both unlawfully taking and unlawfully using an automobile. The statute must be viewed as whole to determine the existence of an element of *mens rea*. Allstate parses MCL 750.414 and mentions only the prohibition relevant under MCL 500.3113, *i.e.*, the unlawful taking. Allstate then compares its selected language under MCL 750.414 to MCL 750.413, but that statute does not likewise prohibit the unlawful use of a vehicle. In short, even though the unlawful use of a vehicle under MCL 750.414 is not relevant under the unlawful taking language in MCL 500.3113, the prohibition against unlawful use is relevant to determining the existence of *mens rea* under MCL 750.414, which is central to this case.

## 4. ANALYSIS

Considering MCL 750.414 as a whole, we conclude that it properly requires a showing of knowingly taking without authority or knowingly using without authority. There are several indications within the statute that militate toward the existence of the element of *mens rea*. The phrase "without authority" along with the terms "take" and "use" all plainly have expansive meanings. "Authority" in this context refers to the "right to control, command or determine."[31] "Take" means "to get into one's hands or possession by voluntary action."[32] "Use" means "to employ for some purpose."[33] By themselves, these terms all contemplate voluntary and knowing conduct on the part of the accused.[34] For a person to take personal property without the authority of the actual owner, there must be some evidence to support the proposition that the person from whom he or she received the property did not have the right to control or command the property. And the terms "take" and "use" require at the least some voluntary action. Further, if there were no *mens rea* element respecting the taking or using of a vehicle, the statute could punish otherwise innocent conduct.[35] Accordingly, we conclude that MCL 750.414 is not the exceptional statute that imposes strict liability, but a statute that

---

[31] *Random House Webster's College Dictionary* (1996).

[32] *Id.*

[33] *Id.*

[34] *Tombs*, 472 Mich at 457.

[35] *X-Citement Video*, 513 US at 69.

corresponds with the common-law rule that presumes *mens rea* as to each element of the offense.[36]

## 5. APPLICATION

In this case, plaintiff may present evidence to establish that he did not run afoul of MCL 750.414, and thus did not unlawfully take the motorcycle under MCL 500.3113, because he did not knowingly lack authority to take the motorcycle because he believed that he had authority to do so. Stated differently, plaintiff's argument that he did not unlawfully take the motorcycle under MCL 500.3113 is subject to the criminal statute that prohibits an unlawful taking, MCL 750.414, under which plaintiff may present

---

[36] Moreover, the Legislature appears to have recognized that its description of the unlawful use of a motor vehicle under MCL 750.414 was particularly cumbersome in one respect. That is, before it was amended in 2002, former MCL 750.414 "[p]rovided further, That the provisions of this section shall be construed to apply to any person or persons employed by the owner of said motor vehicle or any one else, who, by the nature of his employment, shall have the charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge or consent." This provision clearly was intended to ensure that employees using work vehicles would be subject to the same standard as anyone else using someone else's vehicle. By amending MCL 750.414 through the enactment of 2002 PA 672 the Legislature provided employees much greater latitude to use a work vehicle without the owner's knowledge or consent. The change, in essence, worked to remove a presumption that operated against allowing an employee any discretion in using an owner's vehicle, and replaced it with a presumption in favor of an employee's discretion to use the vehicle in excess of the owner's knowledge or consent.

In our view, the Legislature's amendment of MCL 750.414 in this respect is entirely consistent with our view that MCL 750.414 contemplates that the unlawful use of a motor vehicle without an owner's authority may sometimes be a matter of the degree of excessive use. Our Legislature's recognition of this point in enacting 2002 PA 672 reinforces our conclusion that MCL 750.414 does indeed contain a *mens rea* requirement.

evidence to show that he did not knowingly take the motorcycle without the owner's authority.

## B. IMPROPER FACT-FINDING BY THE COURT OF APPEALS

Having provided a basis on which plaintiff may present evidence in this case to establish that he did not violate MCL 750.414, and thereby not be excluded from entitlement to PIP benefits under MCL 500.3113, we nonetheless agree with the circuit court's conclusion that an issue of fact remains with regard to the unlawful taking. The Court of Appeals apparently disregarded the circuit court's statement[37] and opined that "[t]he material facts are undisputed." This was clear error.

Our review of the lower court record reveals compelling evidence to counter plaintiff's claim that he was not complicit in the unlawful taking of the motorcycle. The circuit court correctly found a question of material fact regarding whether the motorcycle was taken unlawfully.

Plaintiff was in possession of a stolen motorcycle only 18 days after it had been stolen. In the early morning hours of August 23, 2009, plaintiff was riding the stolen motorcycle and travelling on the Davison Freeway with another member of the motorcycle club when a car entered the freeway and instantaneously crossed several lanes to cut in front of plaintiff's motorcycle. This action caused plaintiff to lay the motorcycle down and collide with the car. Plaintiff sustained serious and substantial injuries yet neither he nor the other member of his motorcycle club called the police or summoned

---

[37] In ruling from the bench, the circuit court expressly stated that "there's an issue of fact as to the unlawful taking."

17

emergency medical care. To the contrary, the two left the motorcycle on the side of the freeway, fled the scene of the accident and drove to the hospital. At the hospital, plaintiff was eventually confronted by police and he fabricated a story that denied his connection to the motorcycle. Specifically, plaintiff told police he was walking across the freeway on his way home from the bar when he was struck and dragged down the freeway by a car. Plaintiff later recanted his story, claiming that he lied to police only to avoid getting a ticket. When plaintiff finally confessed involvement in the accident involving the stolen motorcycle, he told police that it was an Andre "Smith I presume" who had loaned him the motorcycle. Yet, plaintiff had never met Andre before Andre loaned him the motorcycle, did not have Andre's phone number, did not know where Andre lived, and did not try to contact Andre after the accident. Plaintiff maintains that it is his belief that the motorcycle remains in the police compound. "Possession of the fruits of a robbery plus certain other facts and circumstances permits the inference that the possessor is the thief."[38] This evidence is more than sufficient for a reasonable fact-finder to conclude plaintiff knew that the motorcycle had been stolen and violated MCL 750.414.

The record also reveals, contrary to the claims of plaintiff, that throughout the proceedings Allstate has maintained that plaintiff did not have express or implied

---

[38]*People v Gordon*, 60 Mich App 412, 418; 231 NW2d 409 (1975). See *People v Tutha*, 276 Mich 387, 395; 267 NW 867 (1936) ("Possession of stolen property within a short time after it is alleged to have been stolen raises a presumption the party in possession stole it, and this presumption is either weak or strong, depending upon the facts."), and *People v Quigley*, 217 Mich 213, 225; 185 NW 787 (1921) ("Possession of recently stolen property, accompanied by an active and hurried effort, under an assumed name, to dispose thereof, is evidence to go to the jury upon the issue of whether the accused stole the same.").

18

authority to take the motorcycle. Early on in the proceedings it became clear that "Allstate has asserted that [p]laintiff is barred from collecting PIP benefits pursuant to MCL 500.3113 because he was involved in the theft of the motorcycle that was involved in the accident." Titan relied on Allstate's assertion to argue "[i]f Allstate prevails with this argument, [p]laintiff is barred from collecting PIP benefits from *any carrier* which is involved in this litigation." Further, Allstate's brief to the Court of Appeals states: "[p]laintiff claims he came into possession of the stolen Honda motorcycle when he went to the clubhouse of Phantom Motorcycle Club (although he did not have a motorcycle) and one of the club members, Andre (presumably the ubiquitous) 'Smith,' told him he could use the subject motorcycle that had been stolen from Scott Hertzog." Allstate further maintained on appeal that if plaintiff "is successful in overturning the trial court ruling, a factual issue still remains as to whether . . . plaintiff had a reasonable belief that he was entitled to take and use the vehicle based on the suspicious unsupported assertions by plaintiff regarding his possession and use of the motorcycle in question." Accordingly, for all these reasons we disagree with plaintiff and the Court of Appeals that plaintiff's factual assertions that he did not unlawfully take the motorcycle were undisputed.

## IV. CONCLUSION

We conclude that plaintiff may present evidence that he did not knowingly lack authority to take the motorcycle. In the context of this case, such evidence is admissible to establish plaintiff did not run afoul of MCL 750.414, thereby unlawfully taking the

motorcycle under MCL 500.3113, because he allegedly took the motorcycle believing that he had authority to do so.

We further conclude the Court of Appeals improperly made findings in regard to the facts of this case that were still very much in dispute. We therefore affirm in part and reverse in part the judgment of the Court of Appeals, and remand to the circuit court for further proceedings consistent with this opinion.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Bridget M. McCormack
David F. Viviano

20

STATE OF MICHIGAN

SUPREME COURT


LEJUAN RAMBIN,

      Plaintiff-Appellee,

v                                     No.146256

ALLSTATE INSURANCE COMPANY,

      Defendant/Cross-
      Defendant/Third-Party
      Plaintiff-Appellant,

and

TITAN INSURANCE COMPANY,

      Defendant/Cross-Plaintiff-
      Appellee,

and

AAA OF MICHIGAN,

      Third-Party Defendant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

For the reasons stated in my dissent in *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 544-545; 821 NW2d 117 (2012), I continue to believe that the phrase "taken unlawfully," as used within MCL 500.3113(a), includes only vehicle thefts. However, I agree that there remains a question of fact regarding

whether plaintiff stole the motorcycle in question. Accordingly, I agree with the majority's reversal of the Court of Appeals' decision in part and remand to the trial court.

Michael F. Cavanagh

2