*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

ERIC ANDERSON,

    Defendant-Appellee.

FOR PUBLICATION
October 15, 2019
9:00 a.m.

No. 343272
Kent Circuit Court
LC No. 17-010295-AR

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

JASMINE FERRER,

    Defendant-Appellee.

No. 343273
Kent Circuit Court
LC No. 17-010296-AR

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

CARY GERENCER,

    Defendant-Appellee.

No. 343274
Kent Circuit Court
LC No. 17-010297-AR

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

LOLITTA SHANTILLIA JACKSON,

      Defendant-Appellee.

No. 343275
Kent Circuit Court
LC No. 17-010298-AR

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

EMINA KAHRIMAN,

      Defendant-Appellee.

No. 343276
Kent Circuit Court
LC No. 17-010299-AR

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DORIS PENNY,

      Defendant-Appellee.

No. 343277
Kent Circuit Court
LC No. 17-010300-AR

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

SEQUOYAH LASHAWN MARIE THOMAS,

      Defendant-Appellee.

No. 343278
Kent Circuit Court
LC No. 17-010301-AR

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

No. 343279
Kent Circuit Court

TYISHA MONIKA TOLIVER,                                    LC No.  17-010302-AR

        Defendant-Appellee.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                                        No.  343280
                                                         Kent Circuit Court
ROCONDA J. SINGLETON,                                    LC No.  17-011547-AR

        Defendant-Appellee.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                                        No.  343281
                                                         Kent Circuit Court
SHERYL ANNE HILLYER,                                     LC No.  18-000250-AR

        Defendant-Appellee.

---

Before:  SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

SHAPIRO, J.

Defendants are former nursing aids or assistants charged with intentionally falsifying medical records, MCL 750.492a. The district court declined to bind over defendants, concluding that the "member location sheets" that they allegedly falsified were not "medical records" as that term is defined by the Medical Records Access Act (MRAA), MCL 333.26261 *et seq*. The circuit court agreed and affirmed the district court's decision to dismiss these 10 consolidated cases. The prosecution appeals by leave granted, arguing that the lower courts erred in holding that the member locations sheets were not medical records. We agree. The member location checks that defendants were required to perform were part of the health care provided to the patients by the facility that employed defendants. Because the member location sheets constitute recorded information pertaining to that care, they are medical records under the MRAA, which we conclude must be read *in pari materia* with MCL 750.492a. However, we also conclude that to convict defendants of intentionally or willfully falsifying medical records in violation MCL 750.492a the prosecution must prove that they knew that the member location sheets were medical records. We remand to the district court so that it can determine whether the prosecution can establish probable cause on that element.

I.

Defendants were certified nurse aides (CNA) or certified nursing assistants (CENA)[1] employed by a staffing company and assigned to the Grand Rapids Home for Veterans (GRHV), a residential and skilled nursing facility for military veterans and their spouses, known as members. Many of the relevant patients suffered from serious psychiatric problems or dementia and as a result might elope or create a risk to themselves or others in the facility while unattended. CNAs working at the GRHV were required to perform member location checks for the skilled nursing units at least every two hours to verify that the members were present in their room and, if not, to verify that the patient was located elsewhere in the unit.

Member location sheets were a simple grid. The patients' names were listed vertically and the times at which checks were to be performed were listed horizontally. Thus, for each patient listed there was a box to be completed reflecting whether or not a location check was performed for that time period. Each time a CNA performed a member location check, he or she was to place their initials in the box for that patient and that time. As long as a CNA laid eyes on a member, they could initial the appropriate box on the member location sheet. The parties stipulated prior to the preliminary examination that the member location sheets were not maintained in a member's personal medical chart, but instead in a central location. The parties also stipulated that the GRHV destroyed the location sheets after six months. Under the Public Health Code (PHC), MCL 333.1101 *et seq.*, a health care facility must retain a patient's records for at least seven years. MCL 333.20175(1).

The member location sheets at issue in this case were filled out completely, appearing to show that all member location checks were completed. However, during a performance audit of the GRHV, the Michigan Office of Auditor General determined on the basis of video surveillance tapes that defendants had not performed certain location checks as reported in the corresponding member locations sheets.

On the basis of this discovery, the Health Care Fraud Division of the Attorney General's Office opened an investigation into the GRHV. As a result of this investigation, each defendant was charged with one count of intentionally placing false information in a medical record or chart in violation of MCL 750.492a(1). That statutory provision provides that

> a health care provider or other person, knowing that the information is misleading or inaccurate, shall not intentionally, willfully, or recklessly place or direct another to place in a patient's medical record or chart misleading or inaccurate information regarding the diagnosis, treatment, or cause of a patient's condition. [MCL 750.492a(1).]

The statute goes on to provide, "A health care provider who intentionally or willfully violates this subsection is guilty of a felony." MCL 750.492a(1)(a).

---

[1] The parties appear to use the acronyms CNA and CENA interchangeably. We use the acronym CNA throughout this opinion for consistency.

The preliminary examination was held over the course of three days. Relevant to this appeal, the GRHV's director of nursing, Paula Bixler, testified to the varying levels of cognitive impairment and physical restrictions of the members in the skilled nursing units. Bixler explained that the purpose of the member location checks was to insure the member's health, safety, and well-being; specifically, to ensure that members were not wandering or had eloped off the unit. She testified that the purpose of the member checks was not specifically to look for member incontinence, but a CNA would be expected to address such a situation if they noticed it. Also, if a CNA noticed that a member had fallen or was experiencing a medical emergency, they are required to alert a nurse.

Following the preliminary examination, the district court found probable cause that defendants were health care providers, that the information they were recording was "regarding treatment of these patients' condition," and that "defendants knew that the information that they supplied was misleading or inaccurate." However, the district court did not "find that there's been any evidence to suggest that these location sheets are medical records." In reaching that conclusion, the court considered the definition of medical record found in the MRAA, which provides that a medical record "means information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the patient's health." MCL 333.26263(h)(*i*). The district court said it was arguable whether member location sheets "pertain to the member's health care." But the court noted that a medical record must be maintained by a health care provider or facility, and the testimony at the preliminary examination was that the member location sheets were not treated as medical records by the GRHV. The district court also indicated that the prosecution failed to show probable cause that defendants intentionally or willfully placed information in a medical record.

The prosecution appealed to the circuit court, which affirmed the district court's decision, agreeing with the district court that the MRAA's definition of medical record was applicable to MCL 750.492a(1). The circuit court concluded that the member location sheets did not meet that definition because they contained the names of multiple members, were stored in a central location and were not maintained for seven years as required by MCL 333.20175. The prosecution moved for leave to appeal to this Court in each case. We granted the application for leave to appeal and consolidated the 10 cases.

II.

A.

The prosecution argues that the lower courts erred in determining that the member location sheets were not medical records for purposes of MCL 750.492a. We agree.[2]

---

[2] Generally, whether the district court erred when it decided not to bind over a defendant is reviewed for an abuse of discretion. *People v Greene*, 255 Mich App 426, 434; 661 NW2d 616 (2003). However, "[w]hether a defendant's conduct falls within the scope of a penal statute is a

The goal of statutory interpretation is to discern and give effect to the Legislature's intent. *People v Flick*, 487 Mich 1, 10; 790 NW2d 295 (2010). An initial question we must decide is whether to apply the MRAA's definition of medical record to MCL 750.492a under the doctrine of *pari materia*. "Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007). This is true even if the statutes do not reference one another and were enacted on different dates. *In re $55,336.12 Surplus Funds*, 319 Mich App 501, 507; 902 NW2d 422 (2017). "The object of the rule *in pari materia* is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject." *Apsey v Mem Hosp*, 477 Mich 120, 129 n 4; 730 NW2d 695 (2007) (quotation marks and citations omitted).

The MRAA, the PHC and MCL 750.492a work together to ensure that patients have access to accurate medical records. The MRAA allows patients to examine or obtain copies of medical records held by health care facilities, health care providers, or medical records company. See MCL 333.26265. To ensure that those records are preserved, the PHC requires licensed health professionals and health facilities or agencies to "keep and retain each record for a minimum of 7 years from the date of service to which the record pertains." MCL 333.16213(1); MCL 333.20175(1). MCL 750.492a plays an important role in the preservation of patient's medical records by criminalizing the falsification, alteration, and destruction of those records. So MCL 750.492a, the MRAA and the record retention provisions of the PHC are interrelated.[3]

Significantly, the MRAA's definition of medical records is incorporated into the PHC. See MCL 333.16213(7)(a); MCL 333.20175a(5)(a). By providing the same definition of medical records in both Acts, it is clear that the Legislature intended for the health care facilities and providers to make uniform and consistent decisions as to what constitutes a medical record. We see no reason why the Legislature would want a different definition of medical records to govern MCL 750.492a. It would make little sense for a statutory definition to govern the retention of, and access to, medical records, but to have the falsification and destruction of those records be controlled by a different definition.[4] Moreover, MCL 750.492a contains no alternative definition.

---

question of statutory interpretation that is reviewed de novo." *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017).

[3] Notably, the Attorney General has interpreted MCL 750.492a as being *in pari materia* with the PHC. See OAG, 1993-1994, No. 6819 (September 28, 1994).

[4] Indeed, if we were to conclude that the statutory definition of medical record does not apply to MCL 750.492a, we question whether that statute would be void for vagueness for not providing "fair notice of the conduct prescribed[.]" *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011) (citation omitted). Given that the MRAA and the PHC provide the same definition of medical records, there are legitimate concerns whether a health care provider would have fair notice that this definition does not apply to MCL 750.492a. And, if possible, we must interpret statutes to avoid constitutional issues. *Does 11-18 v Dep't of Corrections*, 323 Mich App 479, 505; 917 NW2d 730 (2018).

For those reasons, we conclude that MCL 750.492a, the MRAA and the pertinent sections of the PHC relate to the same subject matter and share a common purpose. Accordingly, we must read these statutory provision *in pari materia*, and apply the statutory definition of medical records in interpreting MCL 750.492a.[5]

The question then is whether the member location sheets constitute "information oral or recorded in any form or medium that pertains to a patient's health care, medical history, diagnosis, prognosis, or medical condition and that is maintained by a health care provider or health facility in the process of caring for the patient's health." MCL 333.26263(i). The location sheets contain recorded information, so the only issue is whether member location checks pertain to a patient's health care and are recorded in the process of caring for the patient's health. The *Merriam-Webster Online Dictionary* defines "health care" as "efforts made to maintain or restore physical, mental, or emotional well-being especially by trained and licensed professionals . . . ." See <https://www.merriam-webster.com/dictionary/health%20care> (accessed October 8, 2019).[6]

As noted above, the member location sheets at issue pertained to members requiring skilled nursing. Bixler, the director of nursing at GRHV, testified that members who require skilled nursing have a "broad range" of cognitive and medical issues that necessitate that type of care. The location sheets at issue in this case pertained to three skilled nursing units: 1 Main, 1 Red, and 3 South. Bixler explained that the 1 Main is the GRHV's locked psychiatric unit. The members living there had guardians and were unable to make their own health decisions because of various mental illnesses. These mental illnesses combined with their physical needs necessitated their placement in a secured unit. These members are at risk for eloping from the grounds and "striking out at each other." 1 Red is a dementia unit for members who are severely cognitively impaired. Bixler said that these members often wander into other members' rooms, which places both them and the other members at risk of injury. She said it was fairly common

---

[5] We note that the MRAA states, "As used in this act," before providing a list of definitions. MCL 333.26263. And the pertinent PHC sections state, "As used in this section," before providing the definition of medical record. MCL 333.16213(7)(a); MCL 333.20175a(4)(b). However, in *People v Feeley*, 499 Mich 429, 444; 885 NW2d 223 (2016), the Supreme Court declined to hold that such limitations on a statutory definition necessarily precludes application of that definition to other contexts. In that case, the Court determined that the statutes at issue did not share a common purpose. *Id*. The Court then observed that the relevant statutory definition contained the type of limiting language set forth above. *Id*. The Court reasoned, "When statutes do not deal with the same subject or share a common purpose *and* the Legislature has chosen to specifically limit the applicability of a statutory definition, the doctrine of *in pari materia* is inapplicable." *Id*. (emphasis added). In this case, however, the relevant statutes do share a common purpose, i.e., the retention of accurate medical records. And for the reasons discussed above, we are convinced that the definition should be read *in pari materia* with MCL 750.492a.

[6] We may consult a dictionary to determine the ordinary meaning of terms not defined by statute. See *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007).

for these members to be combative or assaultive. 3 South is an "open" unit, for members who are less severely impaired. But that unit does have some members who have been diagnosed with dementia. Many of the members in each of these units also suffered from incontinence. At the relevant time, 1 Main and 1 Red required member checks every hour; 3 South required such checks every two hours.

Bixler's testimony establishes that the member location checks are conducted as part of the health care provided to the pertinent members. The members in the skilled nursing units have cognitive or psychiatric impairments that require regular observation. Those impairments place them at risk of eloping or hurting themselves or other members. These members also commonly have physical impairments or limitations that present other concerns, such as incontinence or falling. By making regular observations of the members, CNAs ensure that the members are where they are supposed to be and that no health or safety issues requiring intervention have arisen. Bixler explained that the CNAs are the "first line" to detect and report health concerns because they are intimately familiar with the members and able to know "when something's off . . . ." When caring for a patient's medical condition requires regular observation, performance of that observation relates to the patient's health care, i.e., efforts made to maintain the patient's well-being. And because the member location checks pertain to a patient's health care, member location sheets are recorded in the process of caring for a patient's health. Consequently, member location sheets satisfy the statutory definition of medical record.

In concluding otherwise, the lower court focused on the fact that GRHV did not treat the location sheets as medical records. That is, the GRHV did not retain the records for a period of seven years as required by the PHC. However, the manner in which the GRHV treats the documents is not controlling. To hold otherwise would allow health care providers to unilaterally determine what is a medical record under the law by deciding whether or not to maintain them for seven years. For the same reason, we reject the argument that the location sheets are not medical records because they were not maintained within the members' individual medical charts, but instead contained the names of multiple members and were stored at a central location for each residential unit. Whether or not materials outside a patient's chart constitute medical records turns on their content, not where they are maintained.[7] If the location of a record or its form was dispositive, a health care facility or provider, not the law, would control what constitutes a medical record; ultimately, however, it is for the courts to interpret and apply the law. See *Michigan Residential Care Ass'n v Dep't of Social Services*, 207 Mich App 373, 377; 526 NW2d 9 (1994). So the fact that the GRHV treated the locations sheets as if they were not medical records has little bearing on our resolution of this issue.

Given our conclusion that the member location sheets are medical records, the next question is whether the inaccurate information placed in those records pertained to "the diagnosis, treatment, or cause of a patient's condition." MCL 750.492a(1). We conclude that the district court correctly found that the location sheets pertained to a patient's treatment.

---

[7] In the event a patient requested a copy of their medical records, the names of the other patients on the sheet could readily be redacted in order to preserve their medical privacy.

-8-

Common sense dictates that medical treatment includes managing symptoms and increased risks associated with a patient's illness. Thus, for the same reasons that member location checks relate to a patient's health care, misleading or inaccurate information placed in the member location sheets pertained to a patient's treatment. Further, as the scheduled member location checks pertained to a patient's health care, recording that the checks were performed if they were not: would constitute inaccurate information regarding a patient's condition.

B.

For purposes of judicial efficiency, and to avoid a possible second interlocutory appeal, we consider the level of intent required by the statute. The district court first raised this issue in ruling on an objection to the testimony of Sharon Gregory, the GRHV's medical records supervisor:

> [O]ne of the elements that is there, is that the [CNA]'s intentionally or willfully placed or directed someone else to place in a medical record or chart, misleading or inaccurate information, knowing that it was misleading or inaccurate. And, I think that how the Home views medical records does go to whether or not this was an intentional or willful act on the part of the [CNA]'s, if they thought or knew they were putting information in a medical record or not. So, I do think it's relevant how the Home views these particular documents and whether they're records or not, just given the fact that all of these people were contracted employees at that facility.

While the district court later ruled on the basis of whether the documents were medical records, it was clearly influenced by its concern whether defendants could be convicted under MCL 750.492a if they did not know the member locations sheets were medical records. For the reasons discussed below, we conclude that MCL 750.492a requires the prosecution to prove such knowledge.

Due process requires that the prosecution prove each element of an offense, including intent, beyond a reasonable doubt. See *People v Wolfe*, 441 Mich 508, 513-514; 489 NW2d 748 (1992). Crimes generally require either general intent or specific intent. "[T]he distinction between specific intent and general intent crimes is that the former involves a particular criminal intent beyond the act done, while the latter involves merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983). Here, defendants are charged with a felony for intentionally or willfully placing misleading or inaccurate information in a patient's medical record. See MCL 750.492a(1)(a). The words "intentionally" and "willfully" indicate a specific intent crime. *People v Disimone*, 251 Mich App 605, 611; 650 NW2d 436 (2002).

Even when the statute provides a *mens rea* requirement, however, questions may remain as to what the intent level requires and whether it applies to all elements and factual circumstances of a crime. The "presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime." *Rambin v Allstate Ins. Co*, 495 Mich 316, 328; 852 NW2d 34 (2014). Intent as to each element is required absent language or legislative history that the Legislature intended to omit this requirement. See *id.* at 330; *People v*

*Cash*, 419 Mich 230, 240; 351 NW2d 822 (1984). The U.S. Supreme Court has also concluded "that the presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime." *People v Tombs*, 472 Mich 446, 454-455; 697 NW2d 494 (2005). The Court has explained "that a defendant generally must know the facts that make his conduct fit the definition of the offense, even if he does not know that those facts give rise to a crime." *Elonis v United States*, ___ US ___; 135 S Ct 2001, 2009; 192 L Ed 2d 1 (2015) (cleaned up). And in a recent case, the Court considered the issue in the context of a statute barring possession of a firearm by certain classes of individuals. In order to "knowingly violate" the statute, the Court held that the defendant must not only know that he possesses a firearm, but also that he is a member of one of the subject excluded classes. *Rehaif v United States*, ___ US ___; 139 S Ct 2191, 2194; 204 L Ed 2d 594 (2019). It stated that "[a]s a matter of ordinary English grammar we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Id*. at 2196 (cleaned up).[8]

Our caselaw is not entirely consistent on what constitutes a "willful" violation of a statute.[9] See *People v Medlyn*, 215 Mich App 338, 344; 544 NW2d 759 (1996) (describing this as an "extremely murky area" of the law). See also *Bryan v United States*, 524 US 184, 191; 118 S Ct 1939; 141 L Ed 2d 197 (1998) (The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears.") (citation omitted). However, it is settled that "when a statute prohibits the willful doing of an act, the act must be done with the specific intent to bring about the particular result the statute seeks to prohibit." *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013) (cleaned up). And, "[t]o commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur . . . ." *People v Whitney*, 228 Mich App 230, 255; 578 NW2d 329 (1998) (cleaned up).

Accordingly, we conclude that to prove an intentional or willful violation of MCL 750.492a the prosecution must establish that the health care provider knew that the document being falsified was a patient's medical record. In the absence of such knowledge, a health care provider would not be acting with specific intent to commit the prohibited act, i.e., the placement of inaccurate information in a medical record. This is not to say that a health care provider must

---

[8] See also *Liparota v United States*, 471 US 419, 433; 105 S Ct 2084; 85 L Ed 2d 434 (1985) (holding that a charge of unlawfully acquiring food stamps requires the prosecution to "prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations."); *United States v X-Citement Video, Inc*, 513 US 64, 78; 115 S Ct 464; 130 L Ed 2d 372 (1994) (holding that a charge of knowingly transporting child pornography in interstate commerce requires the prosecution to prove that the defendant had knowledge of the "sexually explicit nature of the material and to the age of the performers.").

[9] Defendants are charged with "intentionally" or "willfully" violating the statute. Michigan courts have interpreted willful as being synonymous with intentional. *In re Napieraj*, 304 Mich App 742, 746; 848 NW2d 499 (2014); *Jennings v Southwood*, 446 Mich 125, 139; 521 NW2d 230 (1994). Accordingly, we will treat two terms as requiring the same level of intent.

have knowledge of MCL 750.492a or that his or her conduct violated the law. But to be convicted of intentionally or willfully falsifying medical records, the provider must have knowledge of the facts that make that conduct illegal. See *Elonis*, 135 S Ct at 2009.

To be clear, a health care provider cannot escape liability under MCL 750.492a(1) simply by claiming that he or she did not know that the document at issue was a medical record. See *United States v Gullett*, 713 F2d 1203, 1212 (CA 6, 1983) (explaining that knowledge can be inferred from "a reckless disregard for the truth or with a conscious purpose to avoid learning the truth . . . .") (cleaned up). But when a health care provider is an employee of a health care facility that does not treat the recorded information as medical records, it raises a question of fact whether the provider had sufficient criminal intent to intentionally or willfully violate MCL 750.492a(1). Because we concluded that an intentional or willful violation of the statute cannot occur unless the provider has knowledge that the document being falsified is a medical record, we remand to the district court for it to determine whether there is probable cause that defendants knew that the member locations sheets were medical records.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello

-11-