# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS, MARY
FREE BED REHABILITATION HOSPITAL, and
MARY FREE BED MEDICAL GROUP

UNPUBLISHED
December 11, 2018

Plaintiffs-Appellants,

v

No. 341353
Kent Circuit Court
LC No. 17-001462-NF

GEICO GENERAL INSURANCE COMPANY
and GEICO INDEMNITY COMPANY,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(10). This case arises from a single-car accident in the early-morning hours of April 10, 2016. Before the accident, the driver—Armando Mendoza—was traveling at a high rate of speed and lost control, resulting in the crash. Mendoza was driving a Pontiac Grand Prix titled to Elizabeth Serba but used almost exclusively by Elizabeth's daughter, Emily Serba. Mendoza suffered serious injuries in the accident, which were treated by plaintiffs. Defendants insured Mendoza's parents at the time of the accident. Plaintiffs brought this suit against defendants to collect personal protection insurance (PIP) benefits on Mendoza's behalf. After the Michigan Supreme Court decided *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), Mendoza assigned plaintiffs his rights to pursue payment of his medical bills from defendants. The trial court found that there was no question of material fact that, on the night of the accident, Mendoza knowingly took the Grand Prix without authorization, so MCL 500.3113(a) barred plaintiffs' recovery. This appeal followed. We affirm.

Mendoza suffered a traumatic brain injury in the April 10, 2016 crash that affects his memory. Mendoza cannot remember any of the events leading up to his taking the Grand Prix and the ensuing crash. As a result, we can only discern the events that led to Mendoza's taking the Grand Prix by piecing together the testimony of persons that interacted with Mendoza in the days and nights leading up to the accident.

-1-

Lake Serba, Elizabeth's son, testified that he and Mendoza were friends and that Mendoza was staying with him in the days leading up to the accident. Lake explained that Mendoza was in high school and on spring break, and Lake lived at home while taking college classes. Lake lived with Joseph Serba (his father), Elizabeth (his mother), Emily (his sister), Logan Serba (his brother), and Shane (his cousin). The Serba family kept four cars at their house: Joseph drove a 2012 Impala, Elizabeth drove a Dodge Caravan, Emily drove a 2005 Grand Prix, and Lake drove a 2001 Impala. Both Joseph and Elizabeth testified that it was customary for members of the family to ask one another for permission before using the other family member's car.

According to Lake, in the days leading up to the accident, he allowed Mendoza to use his 2001 Impala to drive their friend, Vivian Bjork, home from Lake's house. Bjork lived "about half a mile, maybe" from Lake. Lake testified that Mendoza asked Lake permission to use Lake's car to drive her home, and Lake gave Mendoza permission. Lake was aware that, at that time, Mendoza did not have a driver's license. Lake testified that Mendoza put gas in his car's tank after taking Bjork home.

Bjork confirmed that Mendoza drove her home from the Serbas' residence the day before the accident, but her testimony differed from Lake's in many respects. According to Bjork, Lake was asleep and Mendoza told her that he would take her home. Mendoza used one of the Serbas' vehicles and grabbed the keys from the counter. Bjork believed the car was the Grand Prix. Lake testified, however, that he was not aware of any time that Mendoza drove the Grand Prix before the accident, and that he never gave Mendoza permission to use any car other than the 2001 Impala. But Lake admitted that he never had a conversation with Mendoza about restricting Mendoza's use of Lake's family's vehicles.

Lake also testified that the night before the accident—April 9, 2016—Lake and Mendoza went to Kalamazoo using Lake's car, and Lake allowed Mendoza to drive back. After they got home, they went into the basement where Lake's brother, Logan, sleeps. Lake went to bed while Mendoza stayed up playing video games with Logan. Lake did not have any further discussions with Mendoza. Logan recalled that, on the night before the accident, Mendoza and Lake returned to the Serbas' home late at night, Lake went to bed, and Mendoza stayed up playing video games with Logan. According to Logan, later in the night, Mendoza asked him to drive "to pick up some girls from a party," but Logan said no. About 15 minutes later, Mendoza again asked Logan to take him to pick up the girls, and Logan again said no. Logan then went to bed. According to Logan, Mendoza never asked permission to use one of the family's cars.

Joseph testified that he was asleep at home before the accident, but Mendoza never asked him to use any of the family's vehicles. According to Joseph, even if Mendoza had, the answer would have been no. Similarly, Elizabeth testified that she was asleep at home before the accident and that Mendoza never asked her to use the Grand Prix. Emily, like her parents, testified that she was home before the accident, that Mendoza never asked her to use her car, and that if he did, she would have said no.

It is undisputed that in the early morning hours of April 10, 2016, Mendoza took the Grand Prix to pick up four girls and give them a ride home. Kaitlin Keeler was one of four girls that Mendoza picked up that night. All four girls were together. Mendoza arrived in a car that

Keeler did not recognize. Keeler testified that she and her friends asked Mendoza "like how he got there, like whose vehicle it was, and he told [them] that it was his friend Lake's and that Lake said he could take it but he didn't want to come with because Lake was already asleep." At 3:42 a.m., Mendoza was driving the Grand Prix at a high rate of speed and lost control. In the ensuing crash, all of the occupants of the vehicle suffered injuries.

Various people testified that, in the months after the accident, Mendoza told them that Logan gave him permission to use the Grand Prix. Megan Parker, Mendoza's girlfriend at the time of the accident, testified that Mendoza told her "a million times that he got permission from . . . Logan to drive the car." Rabi Eid, Mendoza's father, testified that, after the accident, Mendoza told him that he had permission to use the Grand Prix on the night of the accident. Rabi also testified that Elizabeth "confirmed" this to Rabi at the hospital, and told him that the permission came from Logan.[1] Maricela Eid, Mendoza's mother, testified that it was her understanding that Logan gave Mendoza permission to use the Grand Prix on the night of the accident.

After discovery, defendants moved for summary disposition. As relevant to this appeal, defendants argued that plaintiffs could not collect PIP benefits because Mendoza was barred from doing so under MCL 500.3113(a). That statute bars recovery of PIP benefits to a person that "willing operates . . . a motor vehicle . . . that was taken unlawfully" so long as the person "knew or should have known that the motor vehicle . . . was taken unlawfully." MCL 500.3113(a). According to defendants, everyone with personal knowledge of whether Mendoza had permission to take the Grand Prix testified that the taking was unauthorized, with the exception of Mendoza who could not remember. Defendants concluded that, based on this evidence, there was no question of fact that the taking was unauthorized—and therefore unlawful—so plaintiffs' claim was barred by MCL 500.3113(a).

In response, plaintiffs argued that there was a question of fact whether Mendoza had permission to take the Grand Prix on the night of the accident. First, plaintiffs contended that Keeler's testimony that Mendoza said he had permission to take the Grand Prix created a question of fact. Next, plaintiffs asserted that there was a question whether Mendoza had ongoing permission to take the Serbas' vehicles because (1) Mendoza used the Serbas' vehicles on several occasions in the days leading up to the accident and (2) Lake never had a conversation with Mendoza about restricting his use of those vehicles. Plaintiffs further argued that Mendoza's filling up Lake's gas tank after dropping Bjork at home created a question of fact about Mendoza's ongoing permissive use because it suggested that he "had taken the Serbas' vehicles frequently."

Plaintiff also contended that, even if Mendoza did not have permission, defendants failed to establish that he knew or should have known that he lacked permission as required by MCL 500.3113(a). Plaintiffs asserted that Keeler's testimony "demonstrates that [Mendoza] believed he had permission to take the vehicle." Plaintiffs also argued that Mendoza's use of the Serbas'

---

[1] Also according to Rabi, at some point in the months before the accident, Rabi saw Mendoza driving Lake's Impala.

-3-

vehicles in the days before the accident made it reasonable for him to believe that he had permission to use the Grand Prix on the night of the accident.

In anticipation that defendants would argue that Keeler's testimony was inadmissible hearsay, plaintiffs gave three counterarguments. First, they argued that Keeler's testimony was not hearsay—meaning that it was not submitted to prove the truth of the matter asserted—but rather was submitted to show "that [Mendoza] **believed** he had permission to take the vehicle." Second, plaintiffs asserted that Keeler's testimony fell under MRE 803(3) because it went to Mendoza's state of mind. Lastly, plaintiffs argued that Keeler's statement would fall under the catch-all hearsay exceptions in MRE 803(24) or MRE 804(b)(7).

In a supplemental brief, plaintiffs contended that the testimonies of Parker, Rabi, and Maricela created an issue as to Logan's credibility and thus precluded summary disposition. According to plaintiffs, this testimony was not hearsay because it was offered for impeachment purposes. Plaintiffs also argued that Parker's, Rabi's, and Maricela's testimonies were admissible for the same reasons that Keeler's testimony was admissible.

Following a hearing, the trial court, in a written opinion and order, granted defendants' motion. The trial court concluded that Keeler's testimony about what Mendoza said before the accident was "blatant hearsay" that was "not an indication of any relevant state of mind," so MRE 803(3) could not apply. The trial court similarly concluded that Keeler's statement could not fall under the catch-all exceptions to hearsay because Mendoza's statement to Keeler "was self-serving" and thus lacked the "circumstantial guarantees of trustworthiness." The trial court also rejected plaintiffs' argument that Mendoza had "open permission" to use the Serba family's vehicles because there was only evidence that he had used them a total of three times. The trial court found that "[t]his does not suggest any kind of continuing or open permission" to use any of the family's vehicles. The trial court concluded that "the only reasonable conclusion based on the evidence is that the Grand Prix was knowingly taken that night by [Mendoza] without authority," so there was no genuine issue of material fact that Mendoza violated MCL 500.3113(a) and was barred from recovery.

On appeal, plaintiffs argue that, for various reasons, the trial court erred by concluding that there was no genuine question of material fact and that MCL 500.3113(a) barred their recovery. We disagree. Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). The trial court granted defendants' summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Only substantively admissible evidence can create a genuine issue of fact under MCR 2.116(C)(10). See *Maiden*, 461 Mich at 123.

Plaintiffs are attempting to collect PIP benefits on Mendoza's behalf from defendants. Mendoza assigned his rights to collect PIP benefits to plaintiffs. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). It follows that if Mendoza is barred from recovery, then plaintiffs are also barred.

At issue here is MCL 500.3113(a), which bars recovery for PIP benefits if, at the time of the accident, "[t]he person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully." In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 516-517; 821 NW2d 117 (2012), our Supreme Court interpreted "taken unlawfully"[2] in the context of MCL 500.3113(a):

> In determining the Legislature's intended meaning of the phrase "taken unlawfully," we must accord the phrase its plain and ordinary meaning, and we may consult dictionary definitions because the no-fault act does not define the phrase. The word "unlawful" commonly means "not lawful; contrary to law; illegal," and the word "take" is commonly understood as "to get into one's hands or possession by voluntary action." When the words are considered together, the plain meaning of the phrase "taken unlawfully" readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law. [Citations omitted.]

The *Spectrum* Court went on to explain two examples of a taking "contrary to Michigan law":

> The Michigan Penal Code contains several statutes that prohibit "takings," including two that prohibit "joyriding," MCL 750.413 and MCL 750.414. MCL 750.413 states that "[a]ny person who shall, wilfully and without authority, take possession of and drive or take away . . . any motor vehicle, belonging to another, shall be guilty of a felony . . . ." Similarly, MCL 750.414 provides in pertinent part that "[a]ny person who takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor . . . ." Thus, both joyriding statutes make it

---

[2] While the operative language in MCL 500.3113(a)—"taken unlawfully"—has not changed since *Spectrum*, other parts of that statute have changed. When *Spectrum* was decided, MCL 500.3113(a) stated that a person was not entitled to PIP benefits if he or she "was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle." MCL 500.3113(a), later amended by 2014 PA 489 (2015).

unlawful to take any motor vehicle without authority, effectively defining an unlawful taking of a vehicle as that which is unauthorized. [*Spectrum*, 492 Mich at 517-518 (citations omitted).]

Here, like the Court in *Spectrum*, we must determine whether plaintiff took the car unlawfully, meaning "without authority." *Id*. We agree with the trial court that here is no question of fact that Mendoza's taking of the Grand Prix was unauthorized. Every member of the Serba household that interacted with Mendoza on the night of the accident or may have had authority to allow Mendoza to take the Grand Prix testified that they did not give Mendoza permission to take the Grand Prix on the night of the accident.[3] Thus, there is no question that Mendoza did not have express permission to take the Grand Prix on the night of the accident.

Plaintiffs contend that Mendoza's use of the Serbas' vehicles in the days and months leading up to the night of the accident gave Mendoza ongoing or implied permission to take the Grand Prix on the night of the accident. We agree with defendants that this argument is conjecture because it is entirely speculative. Conjecture is an explanation consistent with known facts, but not deducible from them as a reasonable inference. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Plaintiffs' argument is arguably consistent with the known facts, but there is simply no way to reasonably infer that Mendoza had "ongoing permission" to use the Grand Prix on the night of the accident. For instance, there is no evidence that Mendoza routinely took and used the Grand Prix and that the Serbas knew but did not object to it. And other evidence actually cuts against plaintiffs' argument. All of the Serba family testified that Emily was very protective of her car and would generally not let others drive it. They also testified that they would ask each other permission before using another family member's car. Based on this evidence, it is unreasonable to infer that Mendoza—a guest at the Serba residence—had ongoing permission to use any car he wanted, let alone the Grand Prix that Emily would not let others drive. Plaintiffs' "ongoing permission" argument is therefore conjecture, and conjecture cannot create a genuine issue of material fact. See *id*.

Even addressing plaintiffs' ongoing-permission argument, it is unconvincing. In the light most favorable to plaintiffs, Mendoza used a Serba vehicle on three occasions before the accident: once a few months before the accident with Lake, once to drive Bjork home, and once the night before the accident when he and Lake were returning from Kalamazoo. We conclude that Mendoza's use of the Serbas' vehicles was so limited that no reasonable juror could conclude that Mendoza had ongoing permission to use them. More importantly, no reasonable juror could conclude that Mendoza had implied or ongoing permission to use the *Grand Prix* because *nothing* supports that Mendoza ever had permission to use that car; only Bjork testified that Mendoza used the Grand Prix, and she testified that it was on one occasion and he did so without asking. Because nothing in the record supports that Mendoza had ongoing permission to

---

[3] While Keeler, Parker, and Rabi testified that Mendoza told each of them that he was given permission, their testimonies were hearsay—as will be explained in detail later—and therefore substantively inadmissible. See MRE 801(c); *Maiden*, 461 Mich at 123.

use the Grand Prix, reasonable minds cannot differ that his taking of the Grand Prix on the night of the accident was unauthorized.[4]

While this would seem to be the end of the inquiry into whether the Grand Prix was "taken unlawfully" under MCL 500.3113(a), it does not. While the *Spectrum* Court stated that the joyriding statutes, MCL 750.413 and MCL 750.414, "effectively defin[e] an unlawful taking of a vehicle as that which is unauthorized," *Spectrum*, 492 Mich at 517-518, our Supreme Court later clarified that those statutes' *mens rea* elements must also be satisfied to bar recovery under MCL 500.3113(a), see *Rambin v Allstate Ins Co*, 495 Mich 316, 331-334; 852 NW2d 34 (2014). In other words, defendants must not only prove that Mendoza took the Grand Prix without permission, but that he took the Grand Prix in violation of a statute. See *id*. at 333 (explaining that the "plaintiff's argument that he did not unlawfully take the motorcycle under MCL 500.3113 is subject to the criminal statute that prohibits an unlawful taking").

> MCL 750.413 states:
>
> Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years.

And MCL 750.414 states, in relevant part:

> Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $1,500.00.

To have violated MCL 750.413, Mendoza must have taken possession of and driven the Grand Prix "wilfully." As for MCL 750.414, our Supreme Court in *Rambin*, 495 Mich at 332, held that it "requires a showing of knowingly taking without authority . . . ." So to have violated MCL

---

[4] Plaintiffs point out that Lake testified that Mendoza filled his car tank with gas after he dropped off Bjork, and contends that this is evidence that Mendoza "drove the Serbas' vehicles frequently." This contention is clearly speculation, see *Libralter Plastics, Inc*, 199 Mich App at 486, as it was just as likely that Mendoza filled up Lake's gas tank because he was appreciative of Lake's allowing Mendoza to stay with him.

Plaintiffs also point out that Lake never had a conversation with Mendoza about restricting Mendoza's use of the vehicles, and contends that this supports that Mendoza had ongoing permission to use the Serbas' vehicles. But that Lake never told Mendoza that Mendoza could not use Lake's family's vehicles without permission is of little consequence. People cannot go around taking other people's property without some type of permission. Lake did not need to spell this out for Mendoza.

750.414, Mendoza must have taken the Grand Prix knowing that he was doing so without authority.

Under the facts of this case, no reasonable juror could conclude that Mendoza did not know that he took the Grand Prix without authority, so there is no question that he knowingly took the car without authority. As explained, no one expressly gave Mendoza authority to take the Grand Prix on the night of the accident. And Mendoza's use of the Serba family's vehicles was not so pervasive for him to reasonably believe that he had ongoing permission to take and use them. Again, in the light most favorable to plaintiffs, Mendoza used a Serba vehicle on three occasions before the accident. In two of those instances, Lake was in the car with Mendoza and Mendoza was driving Lake's car. In the other instance, either Mendoza drove Bjork home in the Grand Prix (as Bjork testified) but no one gave him permission, or Mendoza drove Bjork home in the 2001 Impala with Lake's permission (as Lake testified). Either way, it would not support that Mendoza had implied *permission* to take *Grand Prix* on the night of the accident. Accepting Bjork's testimony, Mendoza took the Grand Prix *without* permission when he drove her home, which would not support that Mendoza reasonably believed that he *had* permission to take it again. Accepting Lake's testimony, Mendoza had permission to take *Lake's* car to drive Bjork home, which simply cannot support that Mendoza believed he had ongoing permission to take the *Grand Prix*. In short, no reasonable juror could conclude that, because Mendoza used a Serba vehicle three times before the accident, he believed that he had permission to take the Grand Prix at three o'clock in the morning on the night of the accident, and so he knew that his taking of the Grand Prix was unauthorized.[5] And because Mendoza knowingly took the Grand Prix without authorization, he took it in violation of MCL 750.414, which in turn satisfies the "taken unlawfully" requirement in MCL 500.3113(a).

For the reasons explained in the previous paragraph, we conclude that reasonable minds could not disagree that Mendoza "knew or should have known" that the Grand Prix was taken unlawfully—since he was the one that knowingly took it without authorization—and so the requirement in MCL 500.3113(a) that "the person knew or should have known that the motor vehicle . . . was taken unlawfully" is satisfied.

On appeal, plaintiffs contend that Keeler's testimony creates a question of fact to both elements of MCL 500.3113(a). The trial court ruled that Keeler's testimony was inadmissible hearsay, and therefore could not create a question of fact. See *Maiden*, 461 Mich at 123. We

---

[5] Plaintiffs contend that the trial court "turn[ed] the burden of proof on its head" because defendants had the burden of proving that Mendoza knew he was taking the Grand Prix without permission, and defendants necessarily could not carry this burden because Mendoza could not remember the events before the accident. But if this case went before a factfinder, he or she would be faced with the same evidence as this Court is now. Namely, even though Mendoza cannot remember the details of the night of the accident, could Mendoza have believed that he had permission to use the Grand Prix based on the evidence that the parties can produce? As explained, based on the evidence presented, reasonable minds could not disagree that Mendoza knew he did not have permission to take the Grand Prix.

agree with the trial court that Keeler's testimony was inadmissible hearsay. And although the trial court did not explicitly rule that Parker's, Rabi's, or Maricela's testimonies were inadmissible hearsay, we conclude that they were.

Keeler's relevant testimony—that Mendoza told her that Lake gave him permission to take the Grand Prix—is clearly hearsay. Under MRE 801(c), " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Keeler's testimony is thus inadmissible to establish that Lake told Mendoza that he could take the Grand Prix on the night of the accident.

Plaintiffs contend that Keeler's testimony is not hearsay if they use it to prove that Mendoza *believed* he had permission to take the Grand Prix on the night of the accident. But Keeler's statement does not tend to prove that Mendoza believed that he had permission to take the Grand Prix unless the substantive fact of Mendoza's statement is true. If Lake gave Mendoza permission—as Keeler testified that Mendoza said—then Mendoza would have reason to believe that he had permission to take the Grand Prix. Conversely, if Lake did not give Mendoza permission, then, regardless of what Mendoza said, he would have no reason to believe that he had permission to take the Grand Prix.[6] In short, the underlying substantive fact of Mendoza's statement to Keeler must be true for that statement to be probative of whether Mendoza believed he had permission to take the Grand Prix. And because Mendoza's statement to Keeler is inadmissible to prove the substantive fact of that statement, see MRE 801(c), Keeler's testimony of what Mendoza told her cannot be probative of what Mendoza believed. As a result, the only way that Mendoza's statement to Keeler would be admissible is if it fell under one of the exceptions to hearsay. See MRE 802.

Plaintiffs argue that Mendoza's statement to Keeler falls under the state-of-mind exception to hearsay in MRE 803(3), which states:

---

[6] Plaintiffs propose a third route: Mendoza believed that the statement was true, so it is probative of what he believed. Plaintiffs' argument can be condensed to this: because Mendoza believed what he said, plaintiffs can use Mendoza's stated belief to prove Mendoza's belief. This is clearly hearsay. See MRE 801(c).

Relatedly, MRE 803(3) appears to categorize a declarant's statement of belief to prove the declarant's belief as inadmissible hearsay. See MRE 803(3) (stating that it does not apply to "a statement of . . . belief to prove the fact . . . believed"). The reason for this is explained in *People v Moorer*, 262 Mich App 64, 73-74; 683 NW2d 736 (2004):

> "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." [Quoting FRE 803(3), Advisory Committee's Note, 56 FRD 183, 305.]

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Keeler testified that she and her friends asked Mendoza "like how he got there, like whose vehicle it was, and he told [them] that it was his friend Lake's and that Lake said he could take it but he didn't want to come with because Lake was already asleep." In *People v Hackney*, 183 Mich App 516, 527 n 2; 455 NW2d 358 (1990), this Court explained that "a statement explaining a past sequence of events (from the standpoint of the declarant at the time of the statement)" are excluded under MRE 803(3) as a statement of "memory or belief to prove the fact remembered or believed . . . ." Because Mendoza's statement to Keeler was about past events and did not relate to Mendoza's "then existing state of mind, emotion, sensation, or physical condition," it does not fall under MRE 803(3). See *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004) ("These statements relate to past events and are specifically excluded under MRE 803(3) as statements of 'memory or belief to prove the fact remembered or believed . . . .' They therefore do not fall within the parameters of MRE 803(3).").

Plaintiffs also argue that Mendoza's statement to Keeler is admissible under the catch-all exceptions to hearsay, MRE 803(24) and MRE 804(b)(7). Plaintiffs further argue that, for the same reasons that Mendoza's statement to Keeler is admissible under these exceptions, the hearsay statements in the testimonies of Parker, Rabi, and Maricela are also admissible under these exceptions.

Under MRE 803(24):[7]

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

As summed up in *People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003):

_____

[7] The language of MRE 803(24) is identical to the language of MRE 804(b)(7), and because plaintiffs do not offer differing analyses for the two rules, we do not differentiate between them.

[E]vidence offered under MRE 803(24) must satisfy four elements to be admissible: (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence.

The requirements of MRE 803(24) "are stringent and will rarely be met." *People v Douglas*, 496 Mich 557, 576; 852 NW2d 587 (2014) (quotation marks and citation omitted).

There is no argument regarding the second element: whether Mendoza had or believed he had permission to use the Grand Prix is, at this point, *the* material fact in this case. But plaintiffs fail to satisfy the third element. Namely, the witnesses' hearsay statements that plaintiffs seek to admit are not the most probative evidence of whether Mendoza had permission to use the Grand Prix that plaintiffs can produce. The third element "essentially creates a 'best evidence' requirement," which "is a high bar and will effectively limit use of the residual exception to exceptional circumstances." *Katt*, 468 Mich at 293.

As stated, the fact that plaintiffs seek to establish with the hearsay statements is whether Mendoza had or believed he had permission to use the Grand Prix. The members of the Serba family all had first-hand knowledge of whether one of them gave Mendoza permission to use the Grand Prix. Each member of the Serba family testified that he or she did not give Mendoza permission, which is probative of the fact whether Mendoza had or believed he had permission to use the Grand Prix. As explained in *Katt*, "nonhearsay evidence on a material fact will nearly always have more probative value than hearsay statements, because nonhearsay derives from firsthand knowledge. Thus, the residual exception normally will not be available if there is nonhearsay evidence on point." *Id*. at 293. We conclude that the hearsay statements that plaintiffs seek to admit are not more probative than the Serba family members' nonhearsay statements, and therefore the hearsay statements proffered by plaintiffs do not satisfy the third element of MRE 803(24).

Finally, in cursory fashion, plaintiffs argue that "if no exception applies, [Keeler], [Parker], Rabi, and Maricela's testimony is admissible to impeach the credibility of the Serbas' post-accident denial that [Mendoza] had permission to drive the Grand Prix." In support of their argument, plaintiffs only cite a case for the proposition that substantively inadmissible evidence may still be admissible as impeachment evidence. See *Merrow v Bofferding*, 458 Mich 617, 631; 581 NW2d 696 (1998). Plaintiffs do not provide any further explanation for why this creates a genuine issue of fact thereby avoiding summary disposition. By failing to do so, plaintiff abandoned this argument. See *Blackburne & Brown Mortg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004) ("Insufficiently briefed issues are deemed abandoned on appeal.") (Quotation marks and citation omitted.)

Ultimately, because Keeler's, Parker's, Rabi's, and Maricella's hearsay testimony is not substantively admissible, plaintiffs cannot use that evidence to create a question of fact. And because there is no genuine issue of material fact and MCL 500.3113(a) is satisfied, Mendoza—and therefore plaintiffs, *Burkhardt*, 260 Mich App at 653—is barred from recovery, and

defendants were entitled to summary disposition as a matter of law. The trial court properly granted the defendants' motion for summary disposition under MCR 2.116(C)(10) and dismissed plaintiffs' complaint.

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien