*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

TIBURCIO PENA-CRUZ and JONATHAN PENA-GARCIA,

      Plaintiffs-Appellees,

v

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant-Appellant.

and

MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY and JOHN DOE INSURANCE COMPANY,

      Defendants.

UNPUBLISHED
March 14, 2024

No. 364284
Wayne Circuit Court
LC No. 21-014679-NF

---

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Defendant-appellant, State Farm Mutual Automobile Insurance Company, appeals by leave granted[1] the trial court's order denying State Farm's motion for summary disposition, in which State Farm argued that plaintiff Tiburcio Pena-Cruz was barred by MCL 500.3113(a) from recovering no-fault benefits.[2] That statute bars a person from receiving no-fault benefits if, at the time of the accident, they were using a vehicle that "was unlawfully taken," and the person

---

[1] *Pena-Cruz v State Farm Mut Automobile Ins Co*, unpublished order of the Court of Appeals, issued May 17, 2023 (Docket No. 364284).

[2] The claims by the other plaintiff—Jonathan Pena-Garcia—against State Farm were dismissed with prejudice in a stipulated order.

-1-

claiming the benefits knew or should have known that the vehicle was unlawfully taken. MCL 500.3113(a). The dispute on appeal is whether the F-150 truck that Tiburcio was driving at the time of the accident "was taken unlawfully" in the context of MCL 500.3113(a). The trial court held that this issue presented a question of fact to be resolved at trial. On the basis of recently published caselaw, we disagree, and accordingly reverse and remand for the trial court to enter an order granting State Farm's motion for summary disposition.

## I. BACKGROUND

On December 19, 2020, plaintiffs were involved in a serious car accident. Tiburcio was driving, and his son, Jonathan Pena-Garcia, was a passenger. According to the traffic report of the accident, Tiburcio was stopped on the roadway because of an accident in front of him. The driver of a second vehicle failed to see Tiburcio stopped and consequently rear-ended him. As a result of the accident, Tiburcio had to be airlifted to the hospital.

At the time of the accident, Tiburcio was driving an F-150 owned by his wife, Maria Garcia-Lopez. Despite being married, the two were not living together at the time of the accident; Tiburcio testified that on December 19, 2020, he was living alone. He explained that he and Maria "were having problems for about two years" and "decided to separate to see if [they could] fix stuff." Tiburcio estimated that, as of the date of the accident, he and Maria had not lived together for two years.

Maria purchased the F-150 involved in the accident on March 7, 2020. Tiburcio confirmed that Maria purchased the F-150 after they were no longer living together.

Maria confirmed that she owned the Ford F-150 involved in the accident, and said that it was titled and registered to only her. When asked whether the F-150 was insured on the date of the accident, Maria testified that it was not because she had cancelled the insurance shortly before the December 19, 2020 accident.[3] When asked who else had access to the F-150, Maria's answer was somewhat unclear; she said that Jonathan "didn't have access" to the F-150 but "sometimes when Jonathan would ask for it, which he would rarely do," she would "let him drive it." But in the next sentence she seemed to say that the first time Jonathan drove the F-150 was on the day of the accident—December 19, 2020. When asked whether she gave Jonathan permission to drive the F-150 on December 19, Maria said, "Yes." But she denied giving Tiburcio permission to drive the F-150 on December 19, and she confirmed that Tiburcio had never driven the F-150 prior to December 19, 2020. When asked if she would have let Tiburcio drive the F-150, she said, "Well, no, he doesn't have a license."

Maria's testimony about why she let Jonathan take the F-150 on the date of the accident is also unclear, but she seemingly testified that she allowed Jonathan to use the F-150 that day while she used another car that she owned to drive to work. But Jonathan testified that the only vehicle Maria kept at her address on the date of the accident was the F-150 and that Maria primarily drove the F-150, and he denied seeing Maria drive any other vehicles around the time of the accident.

_____

[3] In an October 2, 2020 letter sent by State Farm to Maria, State Farm confirmed that Maria's insurance policy for her F-150 was canceled per her request, effective September 2, 2020.

-2-

Regardless, Jonathan confirmed Maria's testimony that he (Jonathan) rarely used the F-150; when asked if he "ever drove" the F-150," Jonathan said, "No."

With respect to the circumstances surrounding how Tiburcio came to be driving Maria's F-150 on December 19, 2020, Jonathan testified that he was living with his mother, Maria, at that time. Jonathan said that, on the day of the accident, he picked Tiburcio up from his house and, together, they were heading to work when the accident happened. Jonathan testified that, at the time of the accident, Tiburcio was driving the F-150 owned by Maria.

Tiburcio likewise testified that the accident occurred while he was going to work. Tiburcio explained that someone named Francisco usually drove him to work because Tiburcio did not have a license, but on the day of the accident, Francisco was unable to take Tiburcio to work. Usually, when that happened, Tiburcio would ask his daughter for a ride to work, but Tiburcio's daughter was also unavailable that day. Tiburcio therefore turned to Jonathan for a ride to work on the day of the accident. But when Jonathan arrived at Tiburcio's house in the early morning, Jonathan told Tiburcio that he was tired. So, according to Tiburcio, "it just made sense for [Tiburcio] to drive." Tiburcio testified that he was not licensed to drive because "[he] didn't drive." Nevertheless, Tiburcio took the F-150 and drove it.

Tiburcio said that he knew Maria was the owner of the F-150. But when asked details about Maria's purchase of the vehicle, Tiburcio said that he did not "have any information" about that. Likewise, when asked whether the F-150 was insured, Tiburcio said that he "did not have any information regarding the pickup." And when asked whether the F-150 was ever garaged anywhere other than at Maria's address, Tiburcio again said that he had "no information regarding that." According to Tiburcio, the day of the accident was the first time that he drove the F-150. When asked whether he had to ask permission to drive the F-150, Tiburcio testified, "So, no. No, I didn't ask for permission. As I've been saying, he came here to pick me up, my son, and he was tired so it just—it was easy for me to just drive to work then." Tiburcio testified that even when he was living with Maria, he did not have keys to any vehicles; only house keys.

Tiburcio estimated that the accident occurred "just past 5 o'clock in the morning." He said that it was still dark, but the roads were in normal condition—"no snow, there was nothing like that." According to Tiburcio, the accident occurred after he came to a stop for a truck that was in the road; while Tiburcio was waiting for the truck to clear the road, another car rear-ended him.

On October 25, 2021, after State Farm failed to pay Tiburcio's no-fault benefits, Tiburcio filed the instant action seeking those benefits.

On September 21, 2022,[4] State Farm moved for summary disposition, arguing that Tiburcio's claim for no-fault benefits was barred by MCL 500.3113(a). That statute bars a person from collecting no-fault benefits if the person was willingly using a motor vehicle that was taken unlawfully, and the person knew or should have known that the vehicle was unlawfully taken. State Farm argued that Tiburcio took the F-150 unlawfully because the vehicle was owned by Maria, Tiburcio never received Maria's permission to drive it, and Tiburcio had no reason to

---

[4] The cutoff for discovery was September 5, 2022.

believe that Maria would allow Tiburcio to drive the F-150 in light of the fact that Tiburcio did not have a driver's license and had never used the F-150 before. State Farm acknowledged that Jonathan had asked Tiburcio to drive before the accident, but argued that this could not save Tiburcio's claim for benefits because our Supreme Court had rejected a "chain of permissive use" exception to MCL 500.3113(a). Thus, the fact that Jonathan gave Tiburcio permission to drive Maria's F-150 did not make Tiburcio's taking of Maria's vehicle lawful because the relevant inquiry was whether Tiburcio took the motor vehicle without *Maria's* permission. State Farm further argued that Tiburcio knew or should have known that his taking of the F-150 was unlawful for the same reasons he took the F-150 unlawfully in the first place—he knew that the vehicle belonged to Maria, he had never received Maria's permission to use the vehicle, and he had reason to believe that Maria would not allow him to drive the motor vehicle because he did not have a driver's license and Maria had never allowed Tiburcio to drive the motor vehicle.

In response, Tiburcio argued that the Supreme Court had not rejected the "chain of permissive use" theory in its entirety; rather, according to Tiburcio, the Supreme Court only held that an intermediate user of a motor vehicle did not have the authority to permit a third person to use the vehicle *if* the owner of the vehicle had expressly prohibited such use by the third person. Plaintiff believed that, otherwise, the "chain of permissive use" theory survived, and plaintiff contended that "a clear chain of permissive use exists" in this case. In support of this assertion, plaintiff relied on the fact that Jonathan had permission to use the F-150, that Jonathan allowed Tiburcio to use the F-150, and that Maria never expressly prohibited Tiburcio from driving the F-150.

The trial court held a hearing on State Farm's motion on October 26, 2022. The parties argued in line with their briefs, after which the trial court delivered its ruling from the bench. After recounting the relevant facts and law, the trial court concluded that there was a question of fact whether Tiburcio unlawfully took the F-150. The trial court reasoned that the "chain or permissive use" theory was still viable because our Supreme Court "did not rule that an intermediate use of a motor vehicle may never validly grant another permission to take and use a vehicle, rather, the intermediary user cannot contradict or overcome an owner's expressed instructions that the end-user may not take or use the vehicle." And the trial court noted both that a chain of permissive use existed in this case (Jonathan had permission to use the F-150, and Jonathan allowed Tiburcio to drive the vehicle) and that Maria never said that Tiburcio was not permitted to use the F-150 (either directly to Tiburcio himself or to Jonathan). The court accordingly concluded that a question of fact remained as to whether Tiburcio unlawfully took the F-150 and whether he knew or should have known that he had unlawfully taken the F-150.

The day after the hearing, the trial court entered an order denying State Farm's motion for summary disposition "for the reasons stated on the record." This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). State Farm moved for summary disposition under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the

-4-

benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

The initial burden in a motion under MCR 2.116(C)(10) rests with the moving party, who can satisfy its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). In response to a properly supported motion under MCR 2.116(C)(10), the nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

## III. ANALYSIS

The statute at issue in this case is MCL 500.3113(a), which currently provides:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully.

The parties' central dispute in this case is the legal effect of certain facts. It is undisputed that Tiburcio took Maria's F-150 without her express permission or authority, Tiburcio made no effort to determine whether Maria (whom Tiburcio knew owned the F-150) authorized his taking of the F-150 despite it being Tiburcio's first time driving that vehicle, and he took the F-150 knowing that it would be illegal for him to drive because he did not have a license. The parties dispute whether, under these facts, Tiburcio is barred by MCL 500.3113(a) from receiving PIP benefits. Very recently, this Court in *Swoope v Citizens Ins Co of the Midwest*, ___ Mich App ___, ___; ___ NW2d ___ (2024) ruled that, under materially identical facts, a user of a motor vehicle was indeed barred by MCL 500.3113(a) from receiving PIP benefits. *Swoope* effectively resolved several questions surrounding MCL 500.3113(a) that had been left open following this Court's 2021 opinion in *Ahmed v Tokio Marine Am Ins Co*, 337 Mich App 1; 972 NW2d 860 (2021). To explain the holding in *Swoope*, this opinion will walk through the various interpretations and applications of MCL 500.3113(a) that led to *Swoope*.

## A. PRE-*SWOOPE* CASELAW

Our Supreme Court first addressed the currently-accepted interpretation of the phrase "taken unlawfully" as used in MCL 500.3113(a)[5] in *Spectrum Health Hosps v Farm Bureau Mut*

---

[5] When *Spectrum Health* was decided, MCL 500.3113(a) stated:

*Ins Co of Michigan*, 492 Mich 503; 821 NW2d 117 (2012). There, the Court explained the phrase's meaning as follows:

> In determining the Legislature's intended meaning of the phrase "taken unlawfully," we must accord the phrase its plain and ordinary meaning, and we may consult dictionary definitions because the no-fault act does not define the phrase. The word "unlawful" commonly means "not lawful; contrary to law; illegal," and the word "take" is commonly understood as "to get into one's hands or possession by voluntary action." When the words are considered together, the plain meaning of the phrase "taken unlawfully" readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law. [*Spectrum Health*, 492 Mich at 516-517 (citations omitted).]

As examples of statutes that could be violated to establish an unlawful taking under MCL 500.3113(a), our Supreme Court pointed to MCL 750.413 and MCL 750.414, which it referred to as the "joyriding statutes." *Spectrum Health*, 492 Mich at 517. The Court explained that these "joyriding statutes make it unlawful to take any motor vehicle without authority, effectively defining an unlawful taking of a vehicle as that which is unauthorized." *Id*. at 517-518. The *Spectrum Health* Court added that "a taking does not have to be larcenous to be unlawful," so "the phrase 'taken unlawfully' in MCL 500.3113(a) applies to anyone who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it." *Id*. at 518.

With this understanding of MCL 500.3113(a) in mind, the *Spectrum Health* Court addressed two judicially-created exceptions to the statute (i.e., situations in which a person could take a vehicle unlawfully but not be barred by MCL 500.3113(a) from receiving PIP benefits) that had developed over the years—the chain-of-permissive-use theory and the "family joyriding" exception.

The chain-of-permissive-use theory originated in *Bronson Methodist Hosp v Forshee*, 198 Mich App 617; 499 NW2d 423 (1993), overruled in part by *Spectrum Health*, 492 Mich 503. In *Bronson*, the injured claimant, Mark Forshee, was injured while driving a car owned by Stanley Pefley. *Id*. at 620-621. Stanley had originally entrusted the vehicle to his son, Thomas Pefley, and specifically forbade Forshee from driving the vehicle. *Id*. at 625. Through the course of several events, Thomas was arrested and entrusted the car to his friend, William Morrow, and Morrow in turn entrusted the vehicle to Forshee. *Id*. at 620-621. Relying on a broad understanding

---

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle. [MCL 500.3113(a) as amended by 1986 PA 93.]

Despite significant differences between the current statute and the statute analyzed by the *Spectrum Health* Court, both versions use the phrase "taken unlawfully."

of "consent" as used in the owner's liability statute, MCL 257.401, and developed through caselaw interpreting that statute, *Bronson* concluded that "when an owner loans his vehicle to another, it is foreseeable that the borrower may thereafter lend the vehicle to a third party and such further borrowing of the vehicle by the third party is, by implication, with the consent of the owner." *Bronson*, 198 Mich App at 625. The *Bronson* Court summarized:

> Mark Forshee's use of the vehicle at the time of the accident was with the owner's consent inasmuch as the owner, Stanley Pefley, entrusted the vehicle to his son, Thomas, who in turn entrusted the vehicle to Morrow, who finally entrusted it to Forshee. Given this unbroken chain of permissive use, we cannot say that Forshee's taking of the automobile was unlawful. [*Id*.]

In *Spectrum Health*, our Supreme Court held "that the *Bronson* Court's 'chain of permissive use' theory is inconsistent with the statutory language of the no-fault act." *Spectrum Health*, 492 Mich at 521. The Court explained that the *Bronson* Court erred by failing to consider the language of MCL 500.3113(a) when purportedly interpreting it. *Spectrum Health*, 492 Mich at 521. MCL 500.3113(a) uses the phrase "taken unlawfully," which "does not appear in the owner's liability statute that *Bronson* considered analogous." *Spectrum Health*, 492 Mich at 521. The owner's liability statute also had broader considerations than MCL 500.3113(a); the owner's liability statute considers an owner's consent *and* knowledge, "which is much broader than the focus in MCL 500.3113(a) on whether the taking was unlawful." *Spectrum Health*, 492 Mich at 521. Lastly, the owner's liability statute considered "*an owner's* express or implied consent or knowledge," whereas MCL 500.3113(a) "examines the legality of the taking from the *driver's* perspective—a perspective that the owner's liability statute lacks." *Spectrum Health*, 492 Mich at 522. On the basis of these considerations, as well as caselaw suggesting that "consent" under the owner's liability statute was more limited than articulated in *Bronson*, see *id*. at 522-523, our Supreme Court "overrule[d] *Bronson* to the extent it is inconsistent with the plain meaning of MCL 500.3113(a)," *Spectrum Health*, 492 Mich at 523. The Court explained that the relevant consideration when addressing whether a taking is unlawful within the meaning of MCL 500.3113(a) "is whether the taking was 'without authority' within the meaning of MCL 750.413 or MCL 750.414." *Spectrum Health*, 492 Mich at 523.[6]

*Spectrum Health* then turned to the family-joyriding exception to MCL 500.3113(a). The Court explained that this exception was first announced by the Supreme Court in a plurality opinion in *Priesman v Meridian Mut Ins Co*, 441 Mich 60, 64; 490 NW2d 314 (1992) (opinion by LEVIN, J.), overruled in part by *Spectrum Health*, 492 Mich 503, and later adopted by the Court of

---

[6] In the case before the *Spectrum Health* Court, the plaintiff had been given permission to use a car by an intermediate user, but it was undisputed that the plaintiff knew that the owner had expressly prohibited the plaintiff from using the vehicle. *Id*. at 524. The Court held that, given the undisputed fact that the plaintiff "took the vehicle *contrary to the express prohibition of the vehicle's owner*," the plaintiff unlawfully took the vehicle within the meaning of MCL 750.414, and was thus precluded by MCL 500.3113(a) from receiving PIP benefits. *Spectrum Health*, 492 Mich at 524.

Appeals in *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244, 249; 570 NW2d 304 (1997), overruled in part by *Spectrum Health*, 492 Mich 503. As articulated in *Butterworth*, the family-joyriding exception provided that MCL 500.3113(a) "does not apply to cases where the person taking the vehicle unlawfully is a family member doing so without the intent to steal but, instead, doing so for joyriding purposes." *Butterworth*, 225 Mich App at 249. In overruling this exception, the *Spectrum Health* Court explained that there was "absolutely no textual basis" for the exception in MCL 500.3113(a). *Spectrum Health*, 492 Mich at 534-535.[7]

Our Supreme Court next had occasion to address MCL 500.3113(a) in *Rambin v Allstate Ins Co*, 495 Mich 316, 319; 852 NW2d 34 (2014), although that case focused on "the meaning of MCL 750.414, the misdemeanor joyriding statute, in the context of MCL 500.3113(a) . . . ." Specifically, the Court in *Rambin* addressed whether MCL 750.414 was a strict liability crime, and it held that it was not—MCL 750.414 "contains a *mens rea* element that the taker must intend to take a vehicle 'without authority.' " *Rambin*, 495 Mich at 320.

The facts of *Rambin* are unusual. The plaintiff was injured while riding a motorcycle owned by Scott Herzog. *Id*. at 321. But the plaintiff had never met Herzog; Herzog's motorcycle was stolen on August 4, 2009, and the plaintiff testified that a person named Andre Smith loaned Herzog's motorcycle to the plaintiff. *Id*. at 322-323. According to the plaintiff, on August 22, 2009, he met Smith at a house, and Smith "handed plaintiff the keys to the motorcycle and told him that he could use the motorcycle for the club ride." *Id*. at 323.

The broad question before the Supreme Court in *Rambin* was whether the plaintiff had unlawfully taken the motorcycle within the meaning of MCL 500.3113(a). This in turn required the Court to consider whether the plaintiff violated MCL 750.414, which prohibited a person from taking another's vehicle "without authority." While the plaintiff plainly lacked Herzog's permission to take Herzog's motorcycle, the plaintiff claimed that "he did not knowingly lack authority to take the motorcycle because he believed that the person who gave him access to the motorcycle was the rightful and legal owner of it." *Rambin*, 495 Mich at 326-327.

*Rambin* concluded that the plaintiff's defense was a viable one. According to our Supreme Court, MCL 750.414 "requires a showing of knowingly taking without authority or knowingly using without authority." *Rambin*, 495 Mich at 332. The Court explained that MCL 750.414's use of the words "authority," "take," and "use" "all contemplate voluntary and knowing conduct on the part of the accused." *Rambin*, 495 Mich at 332. And because a taking must involve voluntary and *knowing* conduct, "[f]or a person to take personal property without the authority of the actual owner, there must be some evidence to support the proposition that the person from

---

[7] *Spectrum Health* was a consolidated case, with the plaintiff in the *Spectrum Health* case receiving benefits under the chain-of-permissive-use theory, and the plaintiff in the other case (*Progressive*) receiving benefits under the family-joyriding exception. See *Spectrum Health*, 492 Mich at 511-514. The plaintiff in the *Progressive* case was not only told by the owner that he was expressly prohibited from using the vehicle he was using at the time of the crash, but the plaintiff was listed as an excluded driver on the policy for that vehicle. *Id*. at 513.

whom he or she received the property did not have the right to control or command the property." *Id*. Applying this rule to the case before it, the *Rambin* Court explained:

> [The] plaintiff may present evidence to establish that he did not run afoul of MCL 750.414, and thus did not unlawfully take the motorcycle under MCL 500.3113, because he did not knowingly lack authority to take the motorcycle because he believed that he had authority to do so. Stated differently, plaintiff's argument that he did not unlawfully take the motorcycle under MCL 500.3113 is subject to the criminal statute that prohibits an unlawful taking, MCL 750.414, under which plaintiff may present evidence to show that he did not knowingly take the motorcycle without the owner's authority. [*Rambin*, 495 Mich at 333-334.]

Following *Spectrum Health* and *Rambin*, this Court addressed MCL 500.3113(a)'s use of the phrase "taken unlawfully" in *Monaco v Home-Owners Ins Co*, 317 Mich App 738, 741; 896 NW2d 32 (2016). There, this Court addressed "the legal question whether a person injured in a motor vehicle accident is barred from recovering PIP benefits under MCL 500.3113(a)—which generally precludes coverage when a person used a vehicle that he or she had 'taken unlawfully'— when the owner of the vehicle permitted, gave consent to, or otherwise authorized the injured person to take and use the vehicle, but the injured person used the vehicle in violation of the law with the owner's knowledge." *Monaco*, 317 Mich App at 741. In *Monaco*, the plaintiff's 15-year-old daughter, Alison, was injured while driving a car owned by the plaintiff and "customarily driven by plaintiff's partner." *Id*. at 741-742. While Alison had her learner's permit, she was only allowed to drive "if accompanied by a licensed parent, guardian, or 21-year old, and she was not so accompanied when the accident occurred." *Id*. at 742. It was disputed whether Alison took the plaintiff's vehicle with the plaintiff's permission, so the case went to trial, and the jury concluded that the insurer "had failed to meet its burden of showing that Alison took the car without permission[.]" *Id*. at 743-744. On appeal, the insurer did not challenge the jury's factual determination that the insurer "failed to satisfy its burden of showing that Alison took the car without permission," and instead only challenged whether Alison's illegal use of the car barred her recovery of PIP benefits under MCL 500.3113(a). *Monaco*, 317 Mich App at 746. This Court held that Alison's unlawful use of the motor vehicle did not render the taking (which was lawful because it was done with the owner's permission) unlawful, explaining that "the unlawful operation or use of a motor vehicle is simply not a concern in the context of analyzing whether the vehicle was taken unlawfully." *Id*. at 749.

This Court addressed MCL 500.3113(a) again five years later in *Ahmed*, 337 Mich App 1. In that case, the plaintiff was injured while driving a car rented by his wife. *Id*. at 5. As part of the rental agreement, the plaintiff's wife agreed that only "Authorized Drivers" could operate the rental vehicle, and an individual needed a valid driver's license to be considered an "Authorized Driver." *Id*. The plaintiff did not have a driver's license, however, and, even though he was with his wife when she rented the vehicle, he never read the rental agreement. *Id*. Nevertheless, this Court held that the plaintiff took the vehicle unlawfully in violation of MCL 750.414. *Id*.

For its analysis, *Ahmed* began by recognizing that MCL 500.3113(a) had been amended by 2014 PA 489 since *Spectrum Health* was decided, and that the 2014 amendment "broadened" the statute. *Ahmed*, 337 Mich App at 10. According to *Ahmed*, in its current state, MCL 500.3113(a) disqualifies from receiving PIP benefits "any person (1) willingly operating or willingly using a

motor vehicle or motorcycle that (2) was unlawfully taken by someone, and (3) the person seeking benefits knew or should have known that the motor vehicle was taken unlawfully." *Ahmed*, 337 Mich App at 10 (quotation marks omitted). But *Ahmed* observed that, despite the amendment to MCL 500.3113(a), the statute continued to use the phrase "taken unlawfully," so it was presumed that the meaning of the phrase as used in the statute continued to be the same. *Ahmed*, 337 Mich App at 10.

*Ahmed* thus reiterated our Supreme Court's construction of the phrase "taken unlawfully" as explained in both *Spectrum Health*, 492 Mich at 516-522, and *Rambin*, 495 Mich at 323 n 7. *Ahmed*, 337 Mich App at 10-11. In a footnote, however, *Ahmed* opined that *Spectrum Health* did not limit "taken unlawfully" as used in MCL 500.3113(a) to only the joyriding statutes, MCL 750.413 and MCL 750.414. *Ahmed*, 337 Mich App at 11 n 5. *Ahmed* opined that, rather, *Spectrum Health*'s reference to the joyriding statutes was in reference "to the particular illegality" at issue in that case. *Id*. And according to *Ahmed*, "The Michigan Vehicle Code defines criminal offenses as well, and violations of its provisions also constitute illegal conduct." *Id*.

This footnote was arguably dicta, however, because *Ahmed* analyzed the taking in the case before it under MCL 750.414. In doing so, *Ahmed* recognized how our Supreme Court interpreted that statute in *Rambin*, 495 Mich at 332-334. See *Ahmed*, 337 Mich App at 12-13. Next, applying the three-part test it formulated earlier in the opinion, *Ahmed* held that there was "no question" that the first element was satisfied—the plaintiff "was 'willingly using' and 'willingly operating' the car"—and there was "no question that the plaintiff's use and operation of the car was without the authority of . . . the owner, because the rental agreement prohibited an unlicensed person from driving it." *Id*. at 13. *Ahmed* was then left to "determine whether these facts amounted to an unlawful 'taking' " in violation of MCL 500.3113(a). *Ahmed*, 337 Mich App at 13. *Ahmed* readily concluded they did, explaining that the plaintiff took the car in violation of the rental agreement when he drove it to his work on the day of the accident, and thus he took the car without authority. *Id*. at 13-14. See also *id*. at 15 ("He took the car by driving it to the gas station where he worked."). *Ahmed* noted that, while the requirements in MCL 500.3113(a) that a person "take" and "operate" a vehicle "are separate, meaning that each must be established, there is no requirement in the statute that different facts established each of the elements." *Ahmed*, 337 Mich App at 14. The *Ahmed* panel summarized the holding from this portion of its opinion as follows:

> [T]he owner of the car[] placed restrictions in the rental agreement, under which only a licensed driver was authorized to use, operate, or drive the car. Plaintiff's acts of driving the car to work and driving it again after work until his involvement in the accident constituted use, operation, and driving of the car and thus were outside the authorization of the owner. Such acts constituted an "unlawful taking" of the car because they constituted possession of it contrary to the owner's authorization. [*Id*. at 15.]

*Ahmed* next addressed the defendant's argument that the plaintiff's taking of the car was unlawful because he did not have a license and it was thus unlawful for plaintiff to drive. *Id*. at 15-16. The plaintiff countered that *Monaco* distinguished between an unlawful taking and unlawful use, and that the latter could not be used to establish the former. *Id*. at 16. *Ahmed* explained that *Monaco*'s holding was a narrow one: "in *Monaco*, the analysis was short and straightforward—the taking was with the owner's permission, and therefore Alison did not have

-10-

the *mens rea* of taking the car contrary to the owner's authorization." *Id*. at 18. Despite this cabining of *Monaco*'s holding, *Ahmed* never held that the plaintiff's taking in the case before it was unlawful because it amounted to a violation of the Michigan Vehicle Code.

Nevertheless, in a footnote, the *Ahmed* panel opined that a violation of the Michigan Vehicle Code could be relevant to determining whether a taking of a vehicle was "unlawful," and *Ahmed* expressed misgivings about *Monaco*'s supposed failure to consider whether Alison's taking of the vehicle in that case was unlawful because she did so in knowing violation of the Michigan Vehicle Code. *Id*. at 20 n 8. *Ahmed* observed that it was illegal for Alison to drive the plaintiff's car in *Monaco*, so her taking of the car by driving it would constitute an "unlawful taking" because (1) to do so would amount to a violation of the Michigan Vehicle Code and (2) there were "associated criminal penalties" with such a violation. *Id*. at 20 n 8. *Ahmed* believed that *Monaco*'s analysis was incomplete because "had *Monaco* considered the question from Alison's perspective, it should have concluded that her driving of the car constituted a taking and that the taking was unlawful because it was illegal under the Michigan Motor Vehicle Code for Alison to drive alone." *Id*. at 20 n 8. But *Ahmed* noted that its disagreement was ultimately irrelevant because it read *Monaco*'s holding as a narrow one, applying only to "the situation in which a car owner tells a person whom the owner knows to be unlicensed under the circumstances that the person nevertheless may drive the car." *Id*. at 20 n 8.

Despite its misgivings about *Monaco*, *Ahmed* distinguished the case before it from *Monaco* by explaining that the owner in *Ahmed* had expressly prohibited the plaintiff's taking of the car in the rental agreement. *Id*. at 21. And having already established that plaintiff's taking of the car was unlawful, see *id*. at 15, "[t]he only additional issue . . . in determining whether MCL 500.3113(a) bars recovery [was] analyzing whether plaintiff 'knew or should have known' that the motor vehicle was taken unlawfully," *Ahmed*, 337 Mich App at 21. *Ahmed* began by recognizing that our Supreme Court in *Spectrum Health* and *Rambin* never had occasion to consider the significance of this requirement because it was added by 2014 PA 489 after *Rambin* was decided. See *Ahmed*, 337 Mich App at 21-22. Thus, *Ahmed* believed that it was required to "first address whether and how the amendment altered the standard set forth in *Rambin*." *Id*. at 22.

In pertinent part, *Ahmed* held that 2014 PA 489 added a scienter requirement to MCL 500.3113(a), which in turn changed the requirement for finding a violation of MCL 750.414 in the context of MCL 500.3113(a). To explain this holding, *Ahmed* began by addressing the significance of the change in MCL 500.3113(a)'s language since *Rambin*. When *Rambin* was decided, MCL 500.3113(a) had a "safe harbor" provision that provided a person would not be excluded from receiving PIP benefits even if the person unlawfully took the motor vehicle or motorcycle if "the person reasonably believed that he or she was entitled to take and use the vehicle." MCL 500.3113(a), as amended by 1986 PA 93. After *Rambin* was decided, our Legislature in 2014 PA 489 eliminated the safe-harbor provision of MCL 500.3113(a), so that the statute now includes the "knew or should have known" language. See MCL 500.3113(a) (stating that a person is not entitled to PIP benefits if "[t]he person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, *and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully*.") (Emphasis added.) *Ahmed* opined that this new language imposed "a scienter requirement," and that this "new scienter standard is . . . significantly more restrictive than was the safe-harbor provision." *Ahmed*, 337 Mich App at 23.

*Ahmed* further opined that, because 2014 PA 489 added a scienter requirement to MCL 500.3113(a), "the amendment . . . modified the scienter requirement under that statute if a violation of MCL 750.414 is at issue." *Ahmed*, 337 Mich App at 24. To explain why, *Ahmed* first noted that, based on *Spectrum Health* and *Rambin*, MCL 500.3113(a) and MCL 750.414 were *in pari materia*, so they must be read together. *Ahmed*, 337 Mich App at 24. *Ahmed* elaborated that if the statutes are read together, then the Legislature's adding a scienter requirement to MCL 500.3113(a) in 2014 PA 489 necessarily meant that the Legislature also "amended *Rambin*'s scienter standard involving MCL 750.414 in cases in which disqualification from eligibility for benefits under MCL 500.3113(a) is at issue." *Ahmed*, 337 Mich App at 25. Otherwise, according to *Ahmed*, "it would be as if 2014 PA 489 had worked no change in the safe-harbor provision or the scienter requirement." *Id*. *Ahmed* accordingly held that, when disqualification of PIP benefits under MCL 500.3113(a) is at issue, a person acts unlawfully under MCL 750.414 if the person takes a motor vehicle or motorcycle and either knows or should have known that the taking had not been authorized by the vehicle or motorcycle owner. *Ahmed*, 337 Mich App at 25-26.[8]

*Ahmed* illustrated how this new rule was different in practice from the rule in *Rambin*. The plaintiff in *Ahmed* lacked actual knowledge that he was prohibited from driving the car because he was unaware of the terms of the rental agreement. *Id*. at 26. Under *Rambin*, this would have meant that the plaintiff's taking was not unlawful "because plaintiff did not knowingly take the car without the owner's authority" *Id*., citing *Rambin*, 495 Mich at 332. But, as *Ahmed* explained,

> the "should have known" language imposes a more restrictive standard. Plaintiff knew that the car was rented; he knew that there was a written rental agreement; and, of course, the law requires him to know his driving status, i.e., whether or not he is a licensed driver, because only a licensed driver may drive. MCL 257.301. Under the "should have known" standard, plaintiff was obligated to determine the scope of the authorization that the owner, Meade Lexus, had set under the rental agreement for a nonparty such as himself to take and drive the car. Stated another way, plaintiff knew that his wife, who was the party to the contractual agreement with Meade Lexus, was not the owner of the car and that any authority to use the car could only be based on the terms set by the owner. Thus, before simply driving off, plaintiff was obligated to learn the terms of the rental agreement; he "should have known" the terms because a person may not simply take what he knows to be another's property without taking any steps to determine if the owner authorized the taking. The mere assumption or supposition that it must be permissible to take a third party's property, without more, does not satisfy the "should have known" standard of MCL 500.3113(a). [*Ahmed*, 337 Mich App at 26-27.]

---

[8] Tiburcio argues on appeal that this portion of *Ahmed* was wrongly decided, and offers a plausible explanation for why. Yet the *Ahmed* panel's interpretation is also plausible, and as a published decision, *Ahmed* has precedential effect under the rule of stare decisis, MCR 7.215(C), and we are bound to follow it, MCR 7.215(J)(1).

*Ahmed* accordingly held that the plaintiff was barred by MCL 500.3113(a) from recovering PIP benefits because the defendant "fully satisfied the standards of MCL 500.3113(a) as they relate to MCL 750.414 in establishing an unlawful taking." *Ahmed*, 337 Mich App at 27.

*Ahmed* thus made several relevant statements (in arguable dicta) that opened the door about the relevance of certain pieces of evidence, in effect laying the groundwork for the parties' disputes in this case. First, *Ahmed* opined that the phrase "taken unlawfully" as used in MCL 500.3113(a) was not limited to violations of the Michigan Penal Code; rather, pursuant to *Spectrum Health*, it encompassed any taking " 'contrary to Michigan law.' " *Ahmed*, 337 Mich App at 11, quoting *Spectrum Health*, 492 Mich at 517. *Ahmed* accordingly believed that "any violation of the criminal law that leads to a taking of a motor vehicle will constitute an 'unlawful taking' for purposes of MCL 500.3113(a)," including a violation of the Michigan Vehicle Code. *Ahmed*, 337 Mich App at 11 n 5. Second, *Ahmed* opined that, while there is a distinction between the unlawful "taking" and the unlawful "use" of a motor vehicle when an owner has given express permission for the person to take the motor vehicle (as in *Monaco*), a person could also "take" a motor vehicle by driving it, such that (at least when an owner has not expressly authorized the use or taking of the motor vehicle) driving the motor vehicle could constitute a taking. See *id*. at 14-15.[9] With this understanding of what constitutes a taking, *Ahmed* opined that if a person is legally not allowed to drive a motor vehicle pursuant to the Michigan Vehicle Code, but that person takes a vehicle anyway by driving it (which, again, would only be in situations where the person does not have the owner's express permission to take the vehicle), then the taking would be unlawful because it would be illegal under the Michigan Vehicle Code for the person to drive. *Id*. at 20 n 8.

## B. *SWOOPE*

Following *Ahmed*, it was an open question whether courts were required to follow *Ahmed*'s arguable dicta on these issues. That open question was resolved in the very recently published opinion, *Swoope*. In *Swoope*, the plaintiff was involved in a car accident while driving a car owned by her friend. *Swoope*, ___ Mich App at ___; slip op at 1. The plaintiff did not ask her friend to use the car, and at the time of the accident, the plaintiff did not have a valid driver's license. *Id*. at ___; slip op at 1, 4. On appeal, *Swoope* adopted the (arguable) dicta from *Ahmed* in its entirety. First, *Swoope* held that a taking in violation of any criminal law, including a violation of the Michigan Vehicle Code if the violation has criminal penalties, constituted an "unlawful taking" for purposes of MCL 500.3113(a). *Swoope*, ___ Mich App at ___; slip op at 3. Second, *Swoope* implicitly adopted *Ahmed*'s conceptualization of a "taking" when the owner has not given their express permission to be "driving" the vehicle. See *id*. at ___; slip op at 3-4.

---

[9] It seems doubtful that this portion of *Ahmed* is dicta. *Ahmed* plainly held that the plaintiff in that case "took the car by driving it to the gas station where he worked." *Id*. at 15. Thus, it is clear that *Ahmed* held that driving a car *can* constitute a taking, although *Ahmed* did not plainly limit this analysis to situations in which the owner had not expressly authorized the use or taking of the owner's vehicle. Yet that would seemingly be the only plausible reading of *Ahmed* in light of *Monaco*'s untouched holdings.

With these holdings, application of *Ahmed*'s three-part test was straightforward. See *Ahmed*, 337 Mich App at 10 ("[U]nder current law, the disqualification applies to any person (1) "willingly operating or willingly using a motor vehicle or motorcycle" that (2) was unlawfully taken by someone, and (3) the person seeking benefits "knew or should have known" that the motor vehicle was taken unlawfully."). First, it was uncontested that the plaintiff had willingly operated the vehicle. *Swoope*, ___ Mich App at ___ n 3; slip op at 3 n 3. As to the second prong, the plaintiff in *Swoope* admitted that she did not have a license and drove the vehicle anyways, which *Swoope* held "satisfied the second prong because operating a vehicle without a valid license is unlawful for purposes of MCL 500.3113(a)." *Id*. at ___; slip op at 3-4. *Swoope* held that the third prong was also satisfied because (1) the plaintiff knew that she did not have a license and therefore should have understood that her driving the vehicle was unlawful, (2) the plaintiff admitted that she did not have the vehicle's owner's permission to drive the car, and (3) the plaintiff failed to take any steps to determine whether the owner authorized the taking. *Id*. at ___; slip op at 4.

This, according to *Swoope*, shifted the burden back to the plaintiff to demonstrate a material fact for trial. *Id*. at ___; slip op at 4. *Swoope* held that the plaintiff failed to satisfy that burden because none of her evidence "showed that she had a valid driver's license at the time of the accident" or that "the vehicle's owner authorized [the plaintiff's] use of the vehicle." *Id*. at ___; slip op at 4. *Swoope* thus held that the defendant in that case had satisfied its burden, the plaintiff had failed to rebut the same, and accordingly the defendant was entitled to summary disposition. *Id*. at ___; slip op at 4.

## C. APPLICATION OF *SWOOPE*

*Swoope* plainly resolves this case. There is no question that Tiburcio willingly operated or willingly used Maria's F-150, so the first prong from *Ahmed* is satisfied. As to the second and third prongs, Tiburcio did not have a valid driver's license, he knew he did not have a valid driver's, and he took Maria's F-150 anyway without her permission and without taking any steps to ensure that his taking of the F-150 was authorized.

Because Tiburcio did not have Maria's permission, this case is unlike *Monaco* and is more like *Ahmed* and *Swoope*; that is, Tiburcio "took" the F-150 when he drove it. That "taking" was unlawful—and therefore satisfied the second prong from *Ahmed*—"because operating a vehicle without a valid license is unlawful for purposes of MCL 500.3113(a)." *Id*. at ___; slip op at 4.[10]

---

[10] As explained by *Swoope*;

> MCL 257.301 concerns the legality of operating a vehicle without a valid driver's license. It states, in part: "[A]n individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license with the appropriate group designation and indorsements for the type or class of vehicle being driven or towed." MCL 257.301(1). Violations of this statute are considered "unlawful" for purposes of MCL 500.3113(a) because there are related criminal penalties. See MCL 257.901; see also *Ahmed*, 337 Mich App at

Turning to the third prong, Tiburcio knew or should have known that this taking was unlawful because (1) Tiburcio knew that he did not have a valid license, (2) he should have understood that driving without a valid license was unlawful, (3) he admitted that he did not have Maria's permission to drive the F-150, and (4) he failed to take any steps to ensure that his taking of the F-150 was authorized. In accordance with *Swoope* and *Ahmed*, these facts sufficiently satisfied the third prong from *Ahmed*. See *Swoope*, ___ Mich App at ___; slip op at 4.

The parties did not have the benefit of *Swoope* at the time of their briefings, but Tiburcio raises several arguments that were rejected by *Swoope*. We briefly address them.

Tiburcio contends that, based on *Spectrum Health*, only violations of the Michigan Penal Code can constitute an "unlawful taking" under MCL 500.3113(a). Both *Ahmed* and *Swoope* rejected this argument, however. Moreover, contrary to Tiburcio's suggestion, *Spectrum Health* plainly did not limit MCL 500.3113(a) to violations of the Michigan Penal Code, nor is it readily apparent that the Court could have done so, considering that the text of MCL 500.3113(a) applies to all "unlawful takings," not only to "takings in violation of the Michigan Penal Code."

Tiburcio also repeatedly argues on appeal that the fact he had no license when he took the F-150 is of no consequence because that only rendered his *use* of the F-150 illegal. First, to the extent that Tiburcio relies on *Spectrum Health*, *Rambin*, and *Monaco* in support of this argument, those cases are distinguishable. In *Spectrum Health*, the drivers of the motor vehicle were expressly prohibited from using them, so it was irrelevant whether they had a valid license. In *Rambin*, the driver believed that he had express permission from the owner, so (again) it was irrelevant whether he had a valid license. Likewise, in *Monaco*, Alison had express permission from the plaintiff to use the plaintiff's car, so once again it was irrelevant whether Alison could legally drive alone. Only in *Ahmed* (and now *Swoope*) was the driver neither explicitly permitted nor explicitly prohibited (from the driver's perspective) from taking the vehicle. This bleeds into the second problem with this argument—Tiburcio does not dispute *Ahmed*'s conceptualization that, generally speaking, when one does not have permission to use a vehicle, he or she effectuates a "taking" of the vehicle by driving it. *Ahmed* continued to recognize the distinction between unlawfully taking a vehicle and unlawfully using a vehicle, but simply noted that there was no requirement that "taking" the vehicle and "using" or "operating" the vehicle be discrete acts. *Ahmed*, 337 Mich App at 14.

Lastly, Tiburcio emphasizes that express permission is not required for a taking to be lawful. While this is true, no court has held otherwise. Rather, every court considering an owner's lack of express permission merely considered it as one factor in determining whether the person's taking of the vehicle was unlawful. For instance, *Swoope* did not hold that the plaintiff's taking of the vehicle was unlawful solely because she lacked the owner's express permission; rather, that was merely one factor that the Court considered. And that fact was clearly necessary for *Swoope*

20 n 8 ("Violation of [MCL 257.301 and MCL 257.310e(4)] was 'unlawful' . . . because there are associated criminal penalties."). [*Swoope*, ___ Mich App at ___; slip op at 3.]

-15-

to reach the conclusion that it did—if the driver in *Swoope* had the owner's express permission to use the vehicle, then under *Monaco*, the driver's taking of the vehicle was not unlawful.[11]

## IV. CONCLUSION

For the reasons explained, we conclude that there is no question of material fact that Tiburcio is barred by MCL 500.3113(a) from receiving PIP benefits, and the trial court should have granted State Farm's motion for summary disposition on this issue. The trial court's order denying State Farm's motion for summary disposition is accordingly reversed, and the trial court on remand shall enter an order granting State Farm's motion for summary disposition.

Reversed and remanded for the trial court to enter an order granting State Farm's motion for summary disposition. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood

---

[11] Tiburcio also argues that he may have lawfully taken the F-150 because, when he took it from Jonathan, it would have appeared to Tiburcio that Jonathan had the "right to control or command" the F-150. This argument is, at best, incomplete. The argument is reminiscent of the chain-of-permissive-use theory, and it is unclear to what extent, if any, that theory survived *Spectrum Health*. But to any extent that the chain-of-permissive-use theory did survive *Spectrum Health*, it only survived to the extent that an intermediate user's allowing the driver to take the vehicle would suggest to the driver (because the inquiry is viewed from *the driver's* perspective) that he or she was taking the vehicle with the *owner's* (or perceived owner's) permission. See *Spectrum Health*, 492 Mich at 518; *Rambin*, 495 Mich at 332-333. See also *Spectrum Health*, 492 Mich at 523 (explaining that "[w]hat is relevant" to determining whether a vehicle was taken in violation of the joyriding statutes "is whether the taking was 'without authority' within the meaning of MCL 750.413 or MCL 750.414"); *Farmers*, 489 Mich at 909 (MARKMAN, J., concurring) (opining that the lawfulness of a taking depends on whether it was done with the owner's authorization). Unlike in *Rambin*, Tiburcio knew that the person he was receiving the F-150 from was not the vehicle's owner; it is uncontested that Tiburcio knew the F-150 was owned by Maria, not Jonathan. Thus, the pertinent inquiry is whether Tiburcio would have understood that, when Jonathan authorized Tiburcio to take the F-150, the taking was also with Maria's authorization. On this point, Tiburcio offers no explanation as to how or why Tiburcio would have understood that he was taking the vehicle with Maria's authorization when he took it from Jonathan.

-16-